IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MARY TURNER, *et al.*                                                              PLAINTIFFS

V.                                    CASE NO. 4:92-CV-4040

LAFAYETTE COUNTY SCHOOL DISTRICT, *et al.*                                         DEFENDANTS

ARKANSAS DEPARTMENT OF EDUCATION and
ARKANSAS STATE BOARD OF EDUCATION                                                  INTERVENORS

## ORDER

Before the Court is Lafayette County School District's ("LCSD") Motion for Declaratory Judgment, or Alternatively, for Clarification of Previous Orders, or Alternatively, for Modification of Previous Orders. (ECF No. 27). Plaintiffs have filed a response in support of LCSD's motion. (ECF No. 31). The Arkansas Department of Education ("ADE") and Arkansas State Board of Education ("SBE") have filed a response in opposition to the motion. (ECF No. 45). LCSD has filed a reply. (ECF No. 53). The Court finds this matter ripe for consideration

### I.  BACKGROUND

This lawsuit was filed in April 1992 by a staff member and parents and guardians of minor African American students in the Lewisville School District No. 1.[1] In March 1993, the Court dismissed the case with prejudice subject to the terms of a consent decree (hereinafter the "*Turner* Decree"). (ECF Nos. 9 & 10). The *Turner* Decree, in relevant part, enjoined Defendants from

---

[1] Plaintiffs' claims in this case were originally asserted against Lewisville School District No. 1 and other defendants. On November 23, 2015, the Court directed the Clerk of Court to substitute LCSD in place of Lewisville School District No. 1 because Lewisville School District No. 1 had been consolidated with the Stamps School District to form the Lafayette County School District. ECF No. 26. The Court found that the substitution allowed the continuation of the case because Lewisville School District No. 1 had ceased to exist and been succeeded by LCSD.

"engaging in any policies, practices, customs or usages of racial discrimination in any school operation including, but not limited to . . . student assignments, and the treatment of black and other minority pupils within the school system." (ECF No. 9, ¶ 4; ECF No. 27-1, ¶ 4). The *Turner* Decree, likewise, required Defendants to maintain a desegregation and integration policy "which promotes pupil . . . integration rather than one of passive acceptance of desegregation between students of all races without regard to socio-economic status." (ECF No. 9, ¶ 12; ECF No. 27-1, ¶ 12). Moreover, the *Turner* Decree provided that "[t]he district shall hereafter maintain a unitary, racially non-discriminatory school system wherein all schools are effectively and equitably desegregated and integrated." (ECF No. 9, ¶ 13; ECF No. 27-1, ¶ 13). The *Turner* Decree further stated that "[t]he Court shall have continuing jurisdiction of [the decree] in order to [e]nsure compliance with the spirit and terms of [the decree]." (ECF No. 9, ¶ 18; ECF No. 27-1, ¶ 18).

The Arkansas Public School Choice Act of 1989 (the "1989 Act") was in effect at the time the parties executed the *Turner* Decree. The 1989 Act provided for a school choice program whereby a student could apply to attend a public school in a district that the student did not reside in, subject to certain limitations. The 1989 Act provided further that "[n]o student may transfer to a nonresident district where the percentage of enrollment for the student's race exceeds that percentage in his resident district" and that "[i]n any instance where the foregoing provisions would result in a conflict with a desegregation court order, the terms of the order shall govern." (ECF No. 27-2, §§ 11(a-b)).

In 2013, the Arkansas Public School Choice Act of 2013 (the "2013 Act") was enacted, expressly repealing the 1989 Act. The 2013 Act again allowed students to apply to attend a non-resident public school district. However, the 2013 Act did not contain the 1989 Act's limiting

2

language barring segregative inter-district transfers.[2] The 2013 Act allowed any school district to annually declare itself exempt from participating in school choice if said participation would conflict with the school district's obligations under a federal court's "desegregation plan regarding the effects of past racial segregation in student assignment" or a federal court order "remedying the effects of past racial segregation." (ECF No. 27-5, p. 11). Any school district that made this declaration would be exempt from participating in school choice for that school year.

In 2015, the Arkansas Public School Choice Act of 2015 (the "2015 Act") was enacted. The 2015 Act amended the 2013 Act and, among other things, eliminated the school districts' ability to declare themselves exempt from participating in school choice due to a conflict with existing obligations under a federal court's desegregation plan or order. Instead, the 2015 Act required that a school district wishing to be exempt from participating in school choice must submit proof to the ADE "that the school district has a genuine conflict under an active desegregation order or active court-approved desegregation plan with the [2015 Act.]" (ECF No. 27-6, p. 5). If the school district submitted proof of an order or plan to the ADE, the provisions of the order or plan would govern, thereby exempting the school district from participating in school choice.

In 2017, the Arkansas General Assembly passed Act 1066 of the Regular Session of 2017 (the "2017 Act"), which amended the 2015 Act. The 2017 Act, among other things, amended the 2015 Act's language allowing school districts to seek an exemption from participating in school choice. Under the 2017 Act, school districts seeking to be exempt from participation in school choice must now submit proof to the ADE "that the school district has a genuine conflict under an active desegregation order or active court-approved desegregation plan *that explicitly limits the*

---

[2] The term "segregative," as used throughout this Order, refers to a student transfer from a resident school district to a non-resident school district where the percentage of enrollment for the transferring student's race exceeds that percentage in the student's resident district.

*transfer of students between school districts*." (ECF No. 27-7, p. 2) (emphasis added). The ADE evaluates school districts' applications for an exemption from school choice and determines whether to grant an exemption. The SBE decides any appeals of the ADE's decisions regarding school choice exemption applications.

LCSD concedes that it took part in school choice under the 2013 Act for the 2013-2014 school year. However, LCSD states that the basis for participating in school choice was its mistaken belief that participation would not run afoul of its requirements under the *Turner* Decree or its general desegregation obligations. LCSD asserts that during its participation in school choice, a total of thirty students—all non-black—applied for and received school choice transfers out of LCSD. Based on the segregative impact of these transfers and its *Turner* Decree obligations, LCSD "elected to exempt [itself] from participating in the 2013 Act for school year 2014-2015 and declared a conflict with participating under the 2015 Act for school years 2015-16, 2016-2017, and 2017-2018." (ECF No. 27, ¶ 16). LCSD states that the ADE and SBE observed LCSD's exemption or declared a conflict with participation in school choice under the 2013 and 2015 Acts, respectively, for the 2014-2015, 2015-2016, 2016-2017, and 2017-2018 school years.

On December 27, 2017, LCSD applied for an exemption from participating in school choice under the 2017 Act for the 2018-2019 school year and submitted supporting documents to the ADE. On January 19, 2018, the ADE denied LCSD's request for an exemption, finding that LCSD failed to demonstrate that it was subject to a federal court's active desegregation order "explicitly limiting the <u>interdistrict</u> transfer of students." (ECF No. 27-13) (emphasis in original). The ADE found that the *Turner* Decree, which LCSD submitted, among other things, as proof of its conflict, did not explicitly limit inter-district student transfers and, accordingly, the ADE

4

concluded that LCSD would be required to participate in school choice for the 2018-2019 school year.

On February 6, 2018, LCSD appealed the ADE's decision to the SBE. The SBE heard LCSD's appeal on March 8, 2018, and, in a subsequent order dated March 26, 2018, upheld the ADE's decision that LCSD would not receive an exemption and, therefore, must participate in school choice for the 2018-2019 school year. (ECF No. 27-16).

On May 18, 2018, LCSD filed the instant Motion for Declaratory Judgment, or Alternatively, for Clarification of Previous Orders, or Alternatively, for Modification of Previous Orders. (ECF No. 27). LCSD states that it is still subject to the obligations imposed by the *Turner* Decree and that participation in school choice would have a segregative impact on LCSD, thereby causing it to violate the *Turner* Decree. Accordingly, LCSD states that it has a conflict with taking part in school choice pursuant to the 2017 Act. LCSD seeks, through various alternative means of relief, a finding that it is prohibited from taking part in school choice and/or a declaration that portions of the 2017 Act are unconstitutional. On May 25, 2018, Plaintiffs filed a response supporting the instant motion. (ECF No. 31).

On May 23, 2018, the Court issued an order certifying LCSD's constitutional challenge and sending notice to the Arkansas Attorney General's Office pursuant to Federal Rule of Civil Procedure 5.1(b). (ECF No. 29). On June 21, 2018, the ADE and SBE filed a motion to intervene in this case for the limited purpose of opposing the instant motion. (ECF No. 37). On June 22, 2018, the Court held a status conference in which LCSD, Plaintiffs, and counsel from the Arkansas Attorney General's Office participated. On July 2, 2018, the Court granted the ADE and SBE's motion to intervene, thereby allowing those parties to intervene for the limited purpose of opposing

the instant motion. (ECF No. 44). On July 16, 2018, the ADE and SBE filed their response in opposition to the instant motion. (ECF No. 45).

On August 1, 2018, the Court held an evidentiary hearing on LCSD's separate motion for preliminary injunctive relief. At the hearing, the parties offered evidence and witness testimony, much of which is also relevant and applicable to the instant motion. On September 11, 2018, LCSD informed the Court that it did not desire an additional evidentiary hearing regarding the instant motion. (ECF No. 66). On September 21, 2018, the ADE and SBE informed the Court that they also did not desire an additional evidentiary hearing regarding the instant motion. (ECF No. 67). Accordingly, the Court finds the matter fully briefed and ripe for consideration.

## II. DISCUSSION

LCSD seeks a ruling that it is prohibited from taking part in school choice. Specifically, LCSD asks that the Court confirm its conflict with participating in school choice and declare void the SBE's March 28, 2018, order requiring that LCSD participate in school choice. LCSD asks the Court to do so through one of the following means: (1) modifying the *Turner* Decree to prohibit segregative inter-district transfers in light of changes in Arkansas law, occurring with the 2013 repeal of the 1989 Act and the subsequent enactment of the 2017 Act; (2) clarifying that the *Turner* Decree, as written, prohibits segregative inter-district transfers; (3) issuing a declaratory judgment confirming that LCSD has a conflict with participating in school choice due to the *Turner* Decree and ordering the SBE to reverse its March 28, 2018, order requiring LCSD to participate in school choice; or (4) declaring that the 2017 Act is unconstitutional to the extent that it authorizes the ADE to determine whether or not a school district has a conflict with participating in school choice.

The Court will begin by addressing the threshold issue of whether the *Turner* Decree applies to LCSD and, if the Court answers that question affirmatively, will then turn to LCSD's

request for modification of the *Turner* Decree. Next, if necessary, the Court will address LCSD's requests for clarification of the *Turner* Decree, for a declaratory judgment, and that portions of the 2017 Act be declared unconstitutional.

### A. Whether the *Turner* Decree Applies to LCSD

To begin, the Court must address a threshold question that underlies the instant motion—namely, whether the *Turner* Decree applies to LCSD. LCSD takes the position that it is bound by the *Turner* Decree even though that decree applied to the now-defunct Lewisville School District No. 1. The ADE and SBE argue that the *Turner* Decree does not apply to LCSD.

As noted above, LCSD was created through the consolidation of the former Stamps School District and Lewisville School District No. 1. Consolidation of school districts is governed by state statute. *See* Ark. Code Ann. §§ 6-13-1401, *et seq*. The Arkansas Code defines "consolidation" as "the joining of two (2) or more affected school districts or parts thereof to create a new single school district." Ark. Code Ann. § 6-13-1401(4). The Code further states that "'[r]esulting district' means the new school district created from an affected district or districts as a result of consolidation." Ark. Code Ann. § 6-13-1401(6). Additionally, the Code provides that "[a]ny . . . resulting district . . . shall become the successor in interest to the property of the school district dissolved, shall become liable for the contracts and debts of such a school district, and may sue and be sued therefor." Ark. Code Ann. § 6-13-1407(a). Moreover, the SBE's order approving the consolidation petition of the Stamps School District and Lewisville School District No. 1 to form the LCSD states, in relevant part, that "[e]ffective on July 1, 2003, all legally valid assets and liabilities of the Lewisville and Stamps School Districts, including both real and personal property, shall be transferred to and/or assigned to the Lafayette County School District." ECF No. 27-25, ¶ 8.

7

In the case at bar, LCSD is the resulting district that was created by the consolidation of the former Stamps School District and Lewisville School District No. 1. Accordingly, pursuant to both Arkansas statute and the order approving the consolidation, LCSD became the successor in interest of those districts. Therefore, all property, assets, and liabilities of those districts became the property, assets, and liabilities of LCSD. Thus, the *Turner* Decree—under which Lewisville School District No. 1 was bound to act and refrain from acting in various ways—is applicable to the LCSD.

With that threshold issue resolved, the Court now turns to LCSD's various alternative requests for relief, beginning with its request that the Court modify the *Turner* Decree.

**B. Modification of the *Turner* Decree**

LCSD asks that the Court modify the *Turner* Decree to prohibit segregative inter-district transfers in light of significant changes in Arkansas' school choice laws that were not contemplated by the Court or by the parties to this case when they entered into the *Turner* Decree.

Federal Rule of Civil Procedure 60(b) authorizes modification of consent decrees. *Smith v. Bd. of Educ. of the Palestine-Wheatley Sch. Dist.*, 769 F.3d 566, 570 (8th Cir. 2014). "Rule 60(b)(5) provides that a party may obtain relief from a court order when 'it is no longer equitable that the judgment should have prospective application,' not when it is no longer convenient to live with the terms of a consent decree." *Id.* (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992)); *id.* at 572 ("*Rufo* and its progeny grant federal courts of equity substantial flexibility to adapt their decrees to changes in the facts or law."). Further, the Eighth Circuit has found that modification of consent decrees in school desegregation cases is permissible under certain circumstances. *See id.* (affirming a district court's modification of a consent decree in a school desegregation case).

"A party seeking modification of a consent decree 'must [first] establish that a significant change in facts or law warrants revision of the decree.'" *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist., No. 1*, 56 F.3d 904, 914 (8th Cir. 1995) (quoting *Rufo*, 502 U.S. at 393). If the movant carries this burden, the court "must then determine whether the proposed modification is suitably tailored to the changed circumstance." *Id*.

The Court must first determine whether a significant change in facts or law warrants modification of the *Turner* Decree. If the Court answers that question in the affirmative, it will then determine whether LCSD's proposed modification is suitably tailored to the changed circumstance.

### 1. Significant Change in Facts or Law

LCSD contends that the repeal of the 1989 Act and the passage of the 2013, 2015, and 2017 Acts qualifies as a significant change that warrants modification, arguing that the changes in the statutory framework now prevent LCSD from complying with its constitutional obligations to avoid taking any action with the natural and foreseeable consequence of causing a segregative impact within LCSD. LCSD argues further that "[t]he State's shift from enacting laws that prohibited segregation and encouraged integrative transfers to advocating for school choice above all else, including desegregation efforts, is another important change in circumstance justifying modification." (ECF No. 28, p. 26).

The 1989 Act was in effect when the parties executed the *Turner* Decree. The 1989 Act included limitations stating that "[n]o student may transfer to a nonresident district where the percentage of enrollment for the student's race exceeds that percentage in his resident district" and "[i]n any instance where the foregoing provisions would result in a conflict with a desegregation court order, the terms of the order shall govern." (ECF No. 27-2, §§ 11(a-b)). The State of

Arkansas subsequently repealed the 1989 Act and enacted the 2013 Act, which did not contain the 1989 Act's limiting language prohibiting segregative student transfers, and instead allowed school districts to declare themselves exempt from participating in school choice if participation would conflict with the school district's obligations under a court desegregation plan or order. Subsequent amendments to the school choice statutory framework further limited school districts' ability to obtain an exemption from participating in school choice.

Under the current iteration of Arkansas' school choice law—the 2017 Act—a school that claims a conflict with participating in school choice must show that it is subject to an active and enforceable desegregation court order or plan that "explicitly limits the transfer of students between school districts." Ark. Code Ann. § 6-18-1906(a)(2). Accordingly, for LCSD to receive an exemption from participating in school choice under the 2017 Act, it must show that it is subject to a desegregation order that explicitly bars inter-district student transfers.

As previously mentioned, a party seeking modification of a consent decree must show that significant changes in facts or law warrant revision of the decree. *Rufo*, 502 U.S. at 393. "Ordinarily, . . . modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *Mays v. Bd. of Educ. of Hamburg Sch. Dist.*, 834 F.3d 910, 919 (8th Cir. 2016) (quoting *Rufo*, 502 U.S. at 385). However, changes in statutory law may warrant modification. *See Rufo*, 502 U.S. at 388 (noting that "modification of a consent decree may be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent."). Modification may also be warranted when changed factual conditions make compliance with the decree substantially more onerous or when a decree proves to be unworkable because of unforeseen obstacles. *Id.* at 384.

LCSD states that modification is warranted because, at the time the *Turner* Decree was executed, the 1989 Act prohibited segregative transfers of both non-black and black students to non-resident school districts. LCSD argues that the 1989 Act's plain language eliminated the need for the parties to draft the *Turner* Decree in a way that also expressly prohibited segregative inter-district transfers. LCSD asserts that "[f]rom entry of the 1993 *Turner* Decree through the 2013 legislative session, LCSD was able to rely on the restrictions articulated in the 1989 Act as a means of preventing private choice from interfering with its efforts to desegregate." (ECF No. 28, p. 24). However, LCSD argues that it is now unable to comply with its constitutional obligations because the 1989 Act was repealed and replaced with a school choice law that does not contain express limitations against segregative inter-district transfers and instead only affords exemptions from participating in school choice to school districts that can produce a court order explicitly prohibiting the transfer of students between school districts.

The ADE and SBE argue in response that modification of the *Turner* Decree is not warranted in this instance.[3] Without citing to authority, the ADE and SBE argue that the repeal of the 1989 Act and the subsequent passage of the 2013, 2015, and 2017 Acts is not a significant change in circumstances that warrants revision of a consent decree. In a separate section of their brief, the ADE and SBE also argue that the *Turner* Decree does not specifically prohibit inter-district student transfers, but instead prohibits unconstitutional conduct occurring within LCSD itself. The ADE and SBE argue that the Court should not read "inter-district" language into the *Turner* Decree.

---

[3] The Court notes that, although not asserted in the section responding to LCSD's request for modification, the ADE and SBE make the threshold argument that LCSD does not have standing to challenge the constitutionality of the 2017 Act or to request declaratory relief. To the extent that the ADE and SBE also intended to argue that LCSD does not have standing to request modification of the *Turner* Decree, the Court finds that argument unavailing. The Eighth Circuit has made clear in a desegregation context that school districts that are subject to a consent decree may seek modification of the consent decree. *See, e.g.*, *Smith*, 769 F.3d at 570. Accordingly, the Court finds that LCSD has standing to request modification of the consent decree entered into by Lewisville School District No. 1 in this case.

Upon consideration, the Court finds that the repeal of the 1989 Act and its subsequent replacement by the 2013, 2015, and 2017 Acts is a significant change in circumstances. The 1989 Act, which was in effect when the parties executed the *Turner* Decree, expressly prohibited all segregative inter-district student transfers. The *Turner* Decree contains no language expressly prohibiting inter-district student transfers, and instead requires LCSD to "hereafter maintain a unitary, racially non-discriminatory school system wherein all schools are effectively and equitably desegregated and integrated." (ECF No. 9, ¶ 13; ECF No. 27-1, ¶ 13).

The Eighth Circuit has instructed that courts interpreting a consent decree:

> are not to ignore the context in which the parties were operating, nor the circumstances surrounding the order . . . because a consent decree is a particular sort of legal instrument that cannot be read in a vacuum. It is a kind of private law, agreed to by the parties and given shape over time through interpretation by the court that entered it.

*United States v. Knote*, 29 F.3d 1297, 1300 (8th Cir. 1994) (internal quotation marks omitted). Although the *Turner* Decree does not expressly prohibit inter-district transfers, the Court finds that the *Turner* Decree clearly intended to prohibit *any* racial discrimination occurring within the LCSD school district, including preventing student transfers which result in segregation of LCSD's student body. Moreover, it was unnecessary for the parties to draft the *Turner* Decree in a way that explicitly barred segregative inter-district student transfers because that limitation was contemplated by the school choice law in place at the time.

Changes in statutory law may be significant changes in circumstances, and the Court believes that the repeal of the 1989 Act and the subsequent enactment of the 2017 Act is a significant change. *Rufo*, 502 U.S. at 388. Moreover, the Court finds that the 2017 Act's requirement that a school district's produced court order must explicitly bar inter-district transfers presents an unforeseen obstacle that causes the *Turner* Decree to be unworkable, as the parties drafted the *Turner* Decree at a time in which including that language was unnecessary. *Id.* at 384.

In support of this finding, the Court notes that LCSD has established that before the enactment of the 2017 Act, it was able to avoid taking part in school choice pursuant to the *Turner* Decree, but that under the 2017 Act the ADE and SBE cannot and will not allow LCSD to avoid participating in school choice pursuant to the *Turner* Decree's present language. Therefore, the Court finds that LCSD's asserted change in circumstances satisfies its burden because changes in the governing school choice statutory framework—and the ensuing requirements and limitations—have an actual effect on LCSD's ability to comply with the *Turner* Decree. Moreover, the ADE and SBE do not argue, and there is no evidence in the record to indicate, that the parties to the *Turner* Decree contemplated in 1993 that the 1989 Act would be repealed and replaced with a school choice law that requires that the *Turner* Decree contain specific restrictive language that was contemplated by and built into the 1989 Act. Accordingly, the Court finds that LCSD has shown that a significant change in circumstances is present, justifying modification of the *Turner* Decree. The Court will now determine whether LCSD's proposed modification is suitably tailored to the changed circumstance.

### 2. Suitably Tailored Modification

LCSD asks the Court to modify the *Turner* Decree to reflect the changes in the governing school-choice statutory framework since 1993. Specifically, LCSD asks that the Court modify the decree to explicitly prohibit segregative inter-district transfers between LCSD and any other district unless requested as otherwise provided by Arkansas law for educational or compassionate purposes and approved by the LCSD school board. (ECF No. 27, ¶ 48).

The ADE and SBE argue that the modification of the *Turner* Decree is not suitably tailored to the changed circumstances. The ADE and SBE argue that LCSD's proposed modification is an inter-district remedy, which is impermissible in this situation because the Court has not found an

inter-district constitutional violation between LCSD and any of the school districts accepting student transfers from LCSD. The ADE and SBE also argue, without citing to supporting authority, that any modification would have to be based on LCSD's "implied unitary status."

A movant seeking a modification of a consent decree must show that the proposed modification is suitably tailored to the changed circumstance. *Id.* at 391. To be "suitably tailored to the changed circumstance," a modification "must not create or perpetuate a constitutional violation," or "strive to rewrite a consent decree so that it conforms to the constitutional floor." *Id.*

As an initial matter, the Court will take up the ADE and SBE's argument that any modification would have to be based on LCSD's "implied unitary status." Although the ADE and SBE do not explain this argument in the section of their brief opposing modification, they argue elsewhere in their response that the Court should not grant the instant motion because this case was initiated decades ago and there is no evidence that LCSD has failed to reach unitary status or has failed to comply with the *Turner* Decree since this case's dismissal several decades ago. To the extent that the ADE and SBE intended to support their "implied unitary status" argument with this line of argument, the Court finds the argument unpersuasive because LCSD has not obtained unitary status.

It is well settled that a federal court supervising a school system in a desegregation case may order an incremental or partial withdrawal of its supervision and control after finding that the school system has achieved "unitary" status. *Freeman v. Pitts*, 503 U.S. 467, 489 (1992). The ADE and SBE appear to acknowledge this in their brief, as they discuss the presumption that arises "when a school district is *declared* to have reached unitary status." (ECF No. 45, p. 15) (emphasis added). No party to this case has ever asked the Court to determine whether LCSD has achieved

unitary status, nor has the Court declared that LCSD has indeed achieved unitary status. The ADE and SBE cite no authority for the proposition that a school district may attain an "implied unitary status" over time by complying with its constitutional requirements, and the Court is unaware of any such authority. Thus, the Court finds unavailing the ADE and SBE's argument that the Court should deny the instant motion because of an implicitly attained unitary status, and the Court will not address the argument further in this Order.

With that ancillary argument now addressed, the Court finds that LCSD's proposed modification is suitably tailored to the changed circumstances. The ADE and SBE's primary contention is that the Court should not modify the *Turner* Decree to expressly prohibit segregative inter-district student transfers, as it would be an impermissible inter-district remedy because this case originally concerned intra-district conduct. The ADE and SBE argue that the Court has not found in this case that LCSD and another school district committed an inter-district constitutional violation and, thus, any remedy fashioned to address LCSD's conduct must be limited solely to LCSD. The ADE and SBE do not elaborate further on this point, nor do they cite authority supporting the proposition that modification of a consent decree under circumstances like this case is an inter-district remedy. However, the ADE and SBE argue in their response to a separate motion in this case that granting the relief LCSD seeks would "effectively enjoin [other school] districts from accepting [LCSD's] transfer students . . . by way of a modification to a consent order entered in a case to which no other district was ever a party." (ECF No. 57, p. 18).

Assuming *arguendo* that the ADE and SBE's present argument is also based on this line of thinking, the Court finds the argument unpersuasive. The ADE and SBE correctly point out that an "interdistrict remedy is appropriate only upon a showing of a constitutional violation within one district that produces a significant segregative effect in another district." *Little Rock Sch. Dist.*

15

*v. Pulaski Cnty. Special Sch. Dist. No. 1*, 778 F.2d 404, 444 (8th Cir. 1985) (internal quotation marks omitted). The Supreme Court has interpreted this rule to mean that "district courts may not restructure or coerce local governments or their subdivisions." *Liddell v. State of Mo.*, 731 F.2d 1294, 1308 (8th Cir. 1984) (discussing *Hills v. Gautreaux*, 425 U.S. 284 (1976)). In other words, absent proof of an inter-district violation, a court-imposed remedy exceeds its scope when it is "imposed upon governmental units that were neither involved in nor affected by the constitutional violation." *Milliken v. Bradley*, 433 U.S. 267, 282 (1977).

Upon consideration, the Court finds that LCSD's proposed modification would not constitute an inter-district remedy. LCSD asks the Court to modify the *Turner* Decree to prohibit LCSD from allowing segregative inter-district student transfers to other school districts. To be fair, this modification would indirectly prevent other school districts from receiving LCSD transfer students via school choice because LCSD would not be allowed to permit segregative inter-district transfers. However, the ADE and SBE cite no binding authority finding that a remedy like the modification LCSD seeks is an inter-district remedy, and the Court is unaware of any such authority.[4] Rather, the Eighth Circuit has found inter-district remedies where courts order action that directly impacts multiple school districts. *See, e.g.*, *Edgerson on Behalf of Edgerson v. Clinton*, 86 F.3d 833, 837 (8th Cir. 1996) (describing forced consolidation of school districts and imposing an inter-district magnet school plan as inter-district remedies); *Milliken I*, 418 U.S. at 754 (1974) (characterizing the creation of an inter-district student bussing plan as an inter-district remedy).

---

[4] In *Milliken v. Bradley*, the case cited primarily by the ADE and SBE in support of their argument, the United States Supreme Court found an impermissible inter-district remedy where the federal district court forced multiple school districts to consolidate to remedy a condition of segregation found to exist in only one of the school districts. 418 U.S. 717, 744, 752 (1974). In the case at bar, LCSD does not ask the Court to force consolidation of it and any other school district.

16

The present requested modification would not directly restrict any other school district's ability to participate in school choice or to receive students from other school districts that are otherwise eligible to participate in school choice. The proposed modification would only prevent other school districts from receiving segregative student transfers from LCSD pursuant to school choice. This minor intrusion into other school districts' ability to receive LCSD transfer students does not directly impact those other school districts. Therefore, the Court finds that the modification sought by LCSD is not an impermissible inter-district remedy.

LCSD's proposed modification modifies the terms of the *Turner* Decree to include the necessary language required by the 2017 Act, thereby letting LCSD prohibit segregative inter-district transfers from LCSD to other school districts, which it was able to do until the enactment of the 2017 Act. Beginning with the 2019-2020 school year, the *Turner* Decree, as modified, would explicitly feature the newly added language required by the 2017 Act. Thus, the *Turner* Decree would constitute evidence of a "genuine conflict under an active desegregation order or active court-approved desegregation plan that explicitly limits the transfer of students between school districts." Ark. Code Ann. § 6-18-1906(a)(2). Thus, moving forward, no students could complete a segregative inter-district transfer from LCSD to another school district pursuant to the 2017 Act. The Court finds that this modification is suitably tailored to address the changed circumstance that occurred when the 1989 Act was repealed and subsequently replaced by the 2013 Act, the 2015 Act, and—most importantly—the 2017 Act.

The Court will not require that the students who transferred from LCSD to other school districts pursuant to school choice for the 2018-2019 school year return to LCSD. At the time those students transferred, the *Turner* Decree did not contain the necessary language contemplated by the 2017 Act for LCSD to avoid participating in school choice. For this same reason, the Court

will not void the SBE's March 28, 2018, order requiring LCSD to participate in school choice for the 2018-2019 school year. At the time the SBE's March 28, 2018, order was entered, the *Turner* Decree did not feature the necessary language contemplated by the 2017 Act for LCSD to attain an exemption from school choice. The modified *Turner* Decree shall have prospective effect, allowing LCSD to claim an exemption from school choice beginning with the 2019-2020 school year.

### 3. Conclusion

The Court has determined that "a significant change in facts or law warrants revision of the [*Turner* Decree.]" *Little Rock Sch. Dist.*, 56 F.3d at 914. The Court has also determined that "the proposed modification is suitably tailored to the changed circumstance." *Id.* Accordingly, the Court shall modify the *Turner* Decree in accordance with LCSD's above-discussed proposed modification.

### C. Other Requested Forms of Relief

LCSD also requests that the Court grant it relief via other alternative methods. However, in light of the Court's above finding that modification of the *Turner* Decree is warranted, the Court finds it unnecessary to address the parties' arguments regarding the other forms of relief sought.

### III. CONCLUSION

For the above-discussed reasons, the Court finds that LCSD's motion (ECF No. 27) should be and hereby is **GRANTED** to the extent that it requests modification of the *Turner* Decree. Accordingly, the *Turner* Decree (ECF No. 9; ECF No. 27-1) is hereby **MODIFIED** to explicitly prohibit the segregative inter-district transfer of students from LCSD to other school districts, unless such a transfer is requested for education or compassionate purposes and is approved by

LCSD's school board on a case-by-case basis. LCSD's motion (ECF No. 27) is **DENIED AS MOOT** as to the remainder of LCSD's alternative requests for relief.

**IT IS SO ORDERED**, this 17th day of January, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge