IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MARY TURNER, *et al.*                                                                        PLAINTIFFS

v.                                       Case No. 4:92-cv-04040

LEWISVILLE SCHOOL DISTRICT NO. 1                               DEFENDANT

## ORDER

Before the Court is a Motion to Intervene and Declare Lafayette County School District Unitary filed by the Arkansas Department of Education and Board of Education (collectively, "ADE and SBE" or the "Agencies"). ECF No. 95. The Agencies seek to intervene in this case pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. *Id.* The Agencies additionally seek a declaration that Lafayette County School District ("LCSD") has achieved unitary status and ask the Court to terminate the operative consent decree. *Id.* LCSD filed a response in opposition. ECF No. 101. The Agencies filed a reply in support of their motion. ECF No. 103-1. The Court finds the matter ripe for consideration.

### I. BACKGROUND

This lawsuit was filed in April 1992 by a staff member and parents and guardians of minor African American students in the Lewisville School District No. 1.[1] In March 1993, the Court dismissed the case with prejudice subject to the terms of a consent decree (hereinafter the "*Turner* Decree"). ECF Nos. 9, 10. The *Turner* Decree, in relevant part, enjoined Defendants from

---

[1] Plaintiffs' claims in this case were originally asserted against Lewisville School District No. 1 and other defendants. On November 23, 2015, the Court directed the Clerk of Court to substitute LCSD in place of Lewisville School District No. 1 because Lewisville School District No. 1 had been consolidated with the Stamps School District to form the Lafayette County School District. ECF No. 26. The Court found that the substitution allowed the continuation of the case because Lewisville School District No. 1 had ceased to exist and had been succeeded by LCSD.

"engaging in any policies, practices, customs or usages of racial discrimination in any school operation including, but not limited to faculty assignments, student assignments, and the treatment of black and other minority pupils within the school system." ECF No. 9, ¶ 4; ECF No. 27-1, ¶ 4. Moreover, the *Turner* Decree provided that "[t]he district shall hereafter maintain a unitary, racially non-discriminatory school system wherein all schools are effectively and equitably desegregated and integrated." ECF No. 9, ¶ 13; ECF No. 27-1, ¶ 13. The *Turner* Decree further stated that "[t]he Court shall have continuing jurisdiction of [the decree] in order to [e]nsure compliance with the spirit and terms of [the decree]." ECF No. 9, ¶ 18; ECF No. 27-1, ¶ 18.

The Agencies filed the instant motion arguing that it is no longer necessary for the Court to supervise LCSD, and thus the Court should terminate the *Turner* Decree. ECF No. 96, p.1. Further, because LCSD has not yet sought termination, the Agencies request that the Court allow them to intervene to seek termination themselves. *Id.* LCSD opposes the motion. ECF No. 101.

## II.  STANDARD OF REVIEW

Under Fed. R. Civ. P. 24(a)(2), a timely motion for leave to intervene "shall" be granted "when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 738 F.2d 82, 84 (8th Cir. 1984). In the Eighth Circuit, "a party seeking to intervene must establish Article III standing in addition to the requirements of Rule 24." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009). "The requirements for Article III standing are (1) injury, (2) causation, and (3) redressability." *Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 974–75 (8th Cir. 2014); *Metro. St. Louis Sewer Dist.,* 569 F.3d at 833-34. First, the

prospective intervenor "must clearly allege facts showing an injury in fact, which is an injury to a legally protected interest that is 'concrete, particularized, and either actual or imminent.'" *Metro. St. Louis Sewer Dist.,* 569 F.3d at 834 (quoting *Curry v. Regents of the Univ. of Minn.,* 167 F.3d 420, 422 (8th Cir. 1999)). Second, the party seeking to intervene must establish "a causal connection between the injury and the conduct complained of." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[I]n other words, the intervenors alleged injury must be 'fairly traceable to the defendant's conduct.'" *Nat'l Parks Conservation Ass'n*, 759 F.3d at 975 (quoting *Metro. St. Louis Sewer Dist.,* 569 F.3d at 834). Lastly, the prospective intervenor must establish that a "favorable decision will likely redress the injury." *Metro. St. Louis Sewer Dist.,* 569 F.3d at 834. "Abstract injury is not enough." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983).

### III. DISCUSSION

The Agencies argue that they are entitled to intervene because the "State must ensure that Arkansas' students receive a constitutionally adequate education." ECF No. 96, p. 3. The Agencies assert that although "the State has delegated some power over education policy to school districts, it retains the ultimate authority." *Id.* To support this assertion, the Agencies point to Ark. Code Ann. § 6-11-105(a)(1), which states that the SBE shall "[h]ave general supervision of the public schools of the state." *Id.* They further argue that consent decrees, like the *Turner* Decree, interfere with the State's authority over education policy by bringing in federal courts. *Id.* Additionally, the Agencies argue that they cannot count on the school district to represent their interests as it has not yet sought to "free itself of judicial oversight." ECF No. 96, pp. 4-5. Thus, the Agencies argue, "to ensure that a party to the case represents its sovereign interests, the State must itself step in." *Id.* at 5. LCSD argues that the Agencies do not have Article III standing and have "not made the necessary showing to justify intervention pursuant to Rule 24(a) of the Federal

3

Rules of Civil Procedure," and thus the Court should deny the Agencies' Motion to Intervene. The Court agrees with LCSD.

The Agencies have not established that they have Article III standing to intervene on behalf of LCSD. In fact, the Agencies never directly address their own Article III standing. The Agencies argue that "Lafayette's consent decrees involve federal courts in education policymaking, which directly implicates the State's Interests" and that the "State has an obvious federalism interest in not having its education policy subject to federal court supervision." ECF No. 103-1, pp. 1, 4. The Agencies assert that their legally protected interest flows from Ark. Code Ann § 6-11-105(a)(1), which grants the State of Arkansas "general supervision" over the school districts, and the Rules Governing Standards for Accreditation of Arkansas Public School and School Districts 3-A.10 (2020).[2] However, the Court finds that the Agencies' asserted interest is not particularized enough to establish an injury-in-fact in this case. *See Sierra Club v. Entergy Arkansas LLC*, 503 F. Supp. 3d 821 (E.D. Ark. 2020) (finding that the Arkansas Attorney General's Consumer Utility Rate Advocacy Division (CURAD) and coalition of electric consumers failed to establish injury in fact necessary for standing to intervene based on alleged economic interest and injury, because injuries were speculative and because potential intervenors failed to establish that injuries from rate increases were sufficiently particularized, and not of the type shared by the general public); *Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765 (5th Cir. 2023) (affirming district court's decision disallowing the State of Louisiana to intervene in a case involving student discipline issues because the State's asserted interest in the case was too vague to survive the standing requirements of

---

[2] "If the Division is unable to verify the public school district's efforts to comply with the submitted detailed plan required by these Rules, the Division shall recommend to the State Board of Education whether the public school district should be placed on Accredited—Probation status in accordance with these Rules." https://adecm.ade.arkansas.gov/Attachments/Standards_for_Accreditation_(Effective_7-1-20)_155605.pdf.

Article III).  Simply stating an interest in the litigation does not establish Article III standing.[3] *United States v. Texas*, 599 U.S. 670, 677 (2023) ("A 'telling indication of the severe constitutional problem' with [a state's] assertion of standing to bring this lawsuit 'is the lack of historical precedent' supporting it." (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 505, (2010))).

The Agencies have not alleged facts showing an injury to a legally protected interest that is "concrete, particularized, and either actual or imminent."  *Curry,* 167 F.3d at 422.  Because the Court finds that the alleged injury-in-fact is too speculative, it need not address the traceability or redressability factors.  Thus, the Court concludes that the Agencies have failed to establish Article III standing which is required for successful intervention.  Because the Court determines that the Agencies have not demonstrated standing, the Court finds that the Agencies' motion should be denied without reaching the merits of the requirements of intervention pursuant to Federal Rule of Civil Procedure 24(a).[4]

### IV.  CONCLUSION

For the reasons discussed above, the Court finds that the Agencies' Motion to Intervene and Declare Lafayette County School District Unitary (ECF No. 95) should be and hereby is **DENIED**.

**IT IS SO ORDERED**, this 29th day of March, 2024.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[3] The Agencies' arguments present an overly expansive view of Article III standing.  By their logic, any state or state agency could intervene in federal litigation that involves issues of state law.

[4] Federal Rule of Civil Procedure 24(c) provides that "A motion to intervene . . . must state the grounds of intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."  While the Agencies did file a memorandum brief in support of their motion (ECF No. 86), the Court notes that the Agencies did not file the requisite accompanying pleading pursuant to Rule 24(c).