**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**TEXARKANA DIVISION**

**MARY TURNER, ET AL**                                         **PLAINTIFFS**

**v.**                          **CASE NO. 4:92-cv-4040**

**LEWISVILLE SCHOOL DISTRICT NO. 1**                 **DEFENDANTS**

**BRIEF IN SUPPORT OF LCSD'S**
**MOTION FOR DECLARATION OF UNITARY STATUS**

Comes the Defendant, Lafayette County School District ("LCSD"), and requests that the Court enter an order declaring LCSD unitary in all areas addressed in the March 4, 1993 Consent Decree based on its good faith compliance with the provisions therein, and that this case be dismissed with prejudice.

## I.     BACKGROUND

LCSD is a public school district operating in Lafayette County, Arkansas. Its 2023-2024 total enrollment, based on the August 31, 2023 enrollment count, was 483 students, of which 301 (62.3%) were Black.[1] (*See* Exhibit "1", Affidavit of Opal Anderson, hereafter "Anderson Affidavit," ¶ 34; Exhibit "1-E", Lafayette County Elementary School Enrollment Data, August 31, 2023; Exhibit "1-F", Lafayette County High School Enrollment Data, August 31, 2023). LCSD is the product of the former Lewisville School District ("Lewisville") and Stamps School District ("Stamps"), which were consolidated into a single district in July 2003. (*See* Ex. 1, Anderson Affidavit, at ¶ 4). Both Lewisville and Stamps previously operated racially dual public school systems, as was required by Arkansas law until 1954. Lewisville and Stamps merged their racially dual systems circa 1969-1970.

---

[1] Enrollment counts fluctuate throughout the year, but the District will use the August 31, 2023 counts for purposes of this document in order to maintain consistency to the extent possible.

The original Complaint, filed in this case in April 1992, alleged that Lewisville enrolled 586 students, of which 58% (or approximately 340 students) were Black. *See* Doc. 1, Complaint, ¶ 6. This case was filed in 1992 as an action by a Black staff member and a group of Black parents residing in Lewisville and alleging racial discrimination regarding staffing and student assignment practices, among other things. *See generally*, Doc. 1, Complaint.

On March 4, 1993, the Court approved a consent decree proposed by the parties ("1993 Decree") that addressed the following general and specific areas: (1) elimination of discriminatory policies and practices overall, (2) elimination of a racially discriminatory environment, (3) faculty and staff assignments, (4) student assignments, (5) special education, (6) school programs, activities, assignments, and rewards, (7) student discipline, and (8) student retention. *See generally*, Doc. 9, 1993 Decree. The District was also required to submit annual reports to plaintiffs' counsel for a period of three years following entry of the 1993 Decree. *Id*.

Since approximately the 1993-1994 school year, LCSD has operated in good faith and substantially complied with the 1993 Decree's provisions. LCSD now seeks unitary status.

## II.    LEGAL STANDARD

In order to determine whether LCSD is unitary, the Court must consider whether the district has "complied in good faith with its desegregation decree since it was entered." *Little Rock School Dist. v. Pulaski Co. Special School Dist. No. 1*, 237 F.Supp.2d 988, 1027 (E.D. Ark. 2002), citing *Board of Education of Oklahoma City v. Dowell*, 498 U.S. 237, 249-250 (1991). A showing of "good faith" requires that a school district demonstrate "to the public and to the parents and students of the once disfavored race, its good-faith commitment to the whole of the court's decree and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance." *Freeman v. Pitts*, 503 U.S. 467, 491-492. The Court must also

2

determine "'whether the vestiges of past discrimination ha[ve] been eliminated to the extent practicable.'" *Missouri v. Jenkins*, 515 U.S. 70, 89 (1995), quoting *Dowell* at 249-250. In assessing whether or not LCSD has achieved unitary status, the Court must examine "every facet of school operations," (*Dowell*, 498 U.S. at 250, quoting *Green*, 391 U.S. at 435).

## III.    ARGUMENT

An examination of the 1993 Decree and LCSD's current policies and practices demonstrates that LCSD has complied in good faith with its desegregation obligations for a reasonable period of time and should be declared unitary. LCSD's current superintendent, Opal Anderson, has been employed by the District since 1989 and has held the position of superintendent since July 1, 2022. (*See* Ex. 1, Anderson Affidavit, ¶¶ 2, 3). Superintendent Anderson has attested that she believes that LCSD has complied with the provisions of the 1993 Decree since the Decree was entered. *Id.* at ¶ 7.

### A.    Elimination of Racially Discriminatory Practices and Environment

The 1993 Decree enjoined LCSD from "denying any of the plaintiffs, students, faculty and staff any applicable rights provided for by the 14th Amendment and 42 U.S.C. §§ 1981, 1983, and 2000(e)." *See* Doc. 9, 1993 Decree, ¶ 2. The Decree further enjoined LCSD from "allowing a racially discriminatory environment to exist within the school district." *Id.* at ¶ 3. Specifically, the District was directed to adopt a "desegregation and integration policy" and to "effectively communicate that policy to all staff and students." *Id.* at ¶ 12. The policy was required to "be one which promotes pupil and staff integration rather than one of passive acceptance of desegregation between students of all races without regard to socio-economic status." *Id*. This policy is referred to in the 1993 Decree as "affirmative inclusion." *Id*. Finally, the District was directed to "hereafter

maintain a unitary, racially non-discriminatory school system wherein all schools are effectively and equitably desegregated and integrated." *Id.* at ¶ 13.

LCSD has adopted language in its personnel policies in furtherance of the 1993 Decree's directives. (*See* Ex. 1, Anderson Affidavit, at ¶ 10; Exhibit "1-A", Licensed Personnel Policies; and Exhibit "1-B", Classified Personnel policies). Policy 3.19 governs licensed personnel employment and Policy 8.13 governs classified personnel employment; both policies state that the District "is an equal opportunity employer and shall not discriminate on the grounds of race, color, religion, national origin, sex, pregnancy, sexual orientation, gender identity, age, disability, or genetic information." (*See* Ex. 1, Anderson Affidavit, at ¶ 10; Ex. 1-A, Licensed Personnel Policy 3.19, p. 61; Ex. 1-B, Classified Personnel Policy 8.13, p. 36). The licensed policy was adopted in April 2003, and the classified policy has been in place since April 2004. (*See* Ex. 1, Anderson Affidavit, at ¶ 10; Ex. 1-A, Licensed Personnel Policy 3.19, p. 64; Ex. 1-B, Classified Personnel Policy 8.13, p. 39). The District's federal programs coordinator, Harvey Sellers (Black male), handles inquiries regarding non-discrimination. (*See* Ex. 1, Anderson Affidavit, at ¶ 11).

LCSD's student policies also address equal educational opportunity in Policy 4.11. (*See* Ex. 1, Anderson Affidavit, ¶ 29; Exhibit "1-D", Student Policy 4.11, p. 41). The policy states that "no student in the [LCSD] shall, on the grounds of race, color, religion, national origin, sex, sexual orientation, gender identity, age, or disability be excluded from participation in, or denied the benefits of, or subjected to discrimination under any educational program or activity sponsored by the District." *Id*. This policy has been in place since September 2003. (*See* Ex. 1, Anderson Affidavit, ¶ 29; Ex. 1-D, Student Policy 4.11, p. 42).

Since *circa* 1993, to the best of Superintendent Anderson's knowledge, the District has complied with the 1993 Decree's general discrimination prohibitions and has not "den[ied] any of

the plaintiffs, students, faculty, [or] staff any applicable [constitutional] rights" or "allow[ed] a racially discriminatory environment to exist within the school district." (*See* Ex. 1, Anderson Affidavit, ¶ 9).

### B.    Faculty Assignments

The Decree prohibited LCSD from "engaging in any policies, practices, customs or usages of racial discrimination in any school operation including, but not limited to, faculty assignments . . . ." *See* Doc. 9, 1993 Decree, ¶ 4. As noted above, LCSD has had a non-discrimination policy in place in its certified employment policies since at least 2003 and in its classified employment policies since at least 2004. (*See* Ex. 1, Anderson Affidavit, at ¶ 10; Ex. 1-A, Licensed Personnel Policy 3.19, p. 64; Ex. 1-B, Classified Personnel Policy 8.13, p. 39). Superintendent Anderson attested that LCSD does not engage in racial discrimination with respect to any of its operations, including faculty assignments. (*See* Ex. 1, Anderson Affidavit, ¶¶ 7, 9).

The Decree also required LCSD to "develop and hereafter utilize objective, non-discriminatory, job-related employment criteria in the recruitment, selection, placement, promotion, pay, demotion, evaluation, and/or termination of school staff members," with examples of objective criteria given including "certification, education, and previous teaching experience." *See* Doc. 9, 1993 Decree, ¶ 5. Regarding promotion of existing staff, the 1993 Decree also required the District to "develop and implement a policy for promotion of employees which is fair to the incumbent staff, students, and other prospective qualified applicants," with said policy to be implemented "through use of objective, written, pre-determined, job-related criteria" referred to above. *Id.* at ¶ 6.

LCSD's Policy 3.19 governs licensed personnel employment, and Policy 8.13 applies to classified personnel employment. (*See* Ex. 1, Anderson Affidavit, ¶ 10; Ex. 1-A, Licensed

Personnel Policies, p. 61; Ex. 1-B, Classified Personnel Policy 8.13, p. 36). Those policies require all prospective employees to fill out an application form provided by the District. (*See* Ex. 1, Anderson Affidavit, ¶ 13; Ex. 1-A, Licensed Personnel Policies, p. 60; Ex. 1-B, Classified Personnel Policies, p. 35). All employees are subject to a background check, and the superintendent must confirm that their license is not currently suspended or revoked before making a hiring recommendation. *Id*. When considering an applicant for a position, LCSD uses objective, non-discriminatory, job-related employment criteria, including certification, education, and previous teaching experience. (*See* Ex. 1, Anderson Affidavit, ¶ 14). When multiple applicants apply for a position, the principal of the particular school makes the hiring decision. *Id*. at ¶ 15. If the position is for literacy, the literacy facilitator may also participate in the interviews. *Id*. When the District had a math facilitator, the math facilitator would also participate in interviews for math positions. *Id*. If the open position is an administrative position, a hiring committee is formed to conduct interviews. *Id*. at ¶ 16. In recent years, the District has not received many applicants for teaching positions and has struggled to fill vacancies. *Id*. at ¶ 17.

Objective criteria are also used when considering employees for promotion, demotion, evaluations, and/or termination. (*See* Ex. 1, Anderson Affidavit, ¶ 18). Current employees who are interested in moving to another position (*i.e.* a position that would be considered a promotion), are not required to submit a formal application for the position but only need to notify the superintendent and the District's treasurer in writing that they are interested in the open position. *Id*. at ¶ 19. The District retains correspondence from employees indicating their interest in future promotions. *Id*. The District uses the State's Teacher Excellence and Support System ("TESS") for evaluations of all certified personnel. (*See* Ex. 1, Anderson Affidavit, ¶ 20; Ex. 1-A, Licensed Personnel Policy 3.2, p. 12).

Policies 3.36 and 8.31 govern the District's process for determining whether an employee's contract will be renewed and direct the superintendent to make a recommendation based upon: the employee's effectiveness, as judged by his or her evaluations; performance, including disciplinary infractions; and qualifications, including licensure areas, relevant education degrees, and the educator career continuum. (*See* Ex. 1, Anderson Affidavit, ¶ 21; Ex. 1-A, Licensed Personnel Policies, p. 123; and Ex. 1-B, Classified Personnel Policies, p. 101).  An employee's seniority may be considered when all other factors are equal. *Id*. If termination of an employee is necessary, the District's termination policies are found at Licensed Policy 3.36 and Classified Policy 8.31. (*See* Ex. 1, Anderson Affidavit, ¶ 22; Ex. 1-A, Licensed Personnel Policies, p. 123; Ex. 1-B, Classified Personnel Policies, p. 101).  Both policies state that the superintendent may recommend an employee's termination for "violation of District policies, State or Federal laws; State Rules; or Federal regulations. *Id*.

The 1993 Decree also directed the District to "develop and implement plans for increasing the proportion of Black staff at all levels and in all employment categories so that it may be determined that no positions within the district are reserved or preferred for one race or the other." *See* Doc. 9, 1993 Decree, ¶ 5. Since at least 2004, and likely earlier, LCSD has maintained a non-discrimination policy regarding hiring of both certified and classified staff. (*See* Ex. 1, Anderson Affidavit, at ¶ 10; Ex. 1-A, Licensed Personnel Policies, p. 64; Ex. 1-B, Classified Personnel Policies, p. 39)  The effect of that policy has been that Black employees now hold various positions throughout the District. (*See* Ex. 1, Anderson Affidavit, ¶ 23). By way of example, during the 2023-2024 school year, the positions of superintendent, principal, athletic director, coach, teachers in all four core subject areas, yearbook sponsor, FCCLA sponsor, and cheerleading sponsor were held by Black employees. *Id*. at ¶ 24.

The 1993 Decree stated the District's objective to "obtain a balanced faculty, which bears a reasonable relationship to the proportion of Black pupils within the district." *See* Doc. 9, 1993 Decree, ¶ 5. Further, the District was also directed to "have a policy of and . . . make a good faith effort to have all non-administration positions which are specialty in nature (i.e. coaches, departmental heads, band directors, etc.) racially representative of the district's pupil population." *Id.* at ¶ 7. This was to be accomplished by the District "invit[ing] applications for vacancies and compil[ing] a list of persons who are deemed qualified and interested in placement therein . . . and use that list . . . for purposes of filling vacancies." *Id.* The District was also required to "take affirmative steps to insure that Black staff and faculty members are distributed throughout all courses and programs of the system." *Id.* at ¶ 8.

During the 2023-2024 school year, LCSD employed six administrators: one female Black principal, one male Black principal, two white male assistant principals, a Black male federal programs coordinator, and a Black female superintendent (67% Black). (*See* Ex. 1, Anderson Affidavit, ¶ 25; Exhibit "1-C", 2023-2024 Staff Demographics). LCSD employed 51 total certified employees (40% Black), and 59 non-certified employees (56% Black), for a total of 110 employees (48% Black). *Id.* As shown in the table below, LCSD's staff is comprised of the following certified staff (administrators and teachers) and non-certified employees:

| Lafayette County School District | | | | |
|---|---|---|---|---|
| **Employee Classification** | **Black** | **White** | **Other** | **Total** |
| Certified Staff | 20 (40%) | 31 (60%) | 0 (0%) | 51 |
| Non-Certified Staff | 33 (56%) | 26 (44%) | 0 (0%) | 59 |
| Total | 53 (48%) | 57 (52%) | 0 (0%) | 110 |

(*See* Ex. 1-C, 2023-2024 LCSD Staff Demographics).

For the 2023-24 school year, 25 total certified employees (38% Black), and 27.5 non-certified employees (66% Black) were assigned to LCES, for a total of 52.5 employees (52% Black). (*See* Ex. 1, Anderson Affidavit, ¶ 26; Ex. 1-C, 2023-2024 Staff Demographics). LCHS employed 24 total certified employees (35% Black), and 15 non-certified employees (47% Black), for a total of 39 employees (40% Black). *Id.* Racial demographics for district staff and for staff at each school are included in the charts below.

| Lafayette County Elementary School | | | | |
|---|---|---|---|---|
| | **Employee Race** | | | |
| **Employee Classification** | **Black** | **White** | **Other-Race** | **Total** |
| Certified Staff | 9.5 (38%) | 15.5 (62%) | 0 (0%) | 25 |
| Non-Certified Staff | 18 (66%) | 9.5 (34%) | 0 (0%) | 27.5 |
| Total | 27.5 (52%) | 25 (48%) | 0 (0%) | 52.5 |

| Lafayette County High School | | | | |
|---|---|---|---|---|
| | **Employee Race** | | | |
| **Employee Classification** | **Black** | **White** | **Other-Race** | **Total** |
| Certified Staff | 8.5 (35%) | 15.5 (65%) | 0 (0%) | 24 |
| Non-Certified Staff | 7 (47%) | 8 (53%) | 0 (0%) | 15 |
| Total | 15 (40%) | 23.5 (60%) | 0 (0%) | 39 |

| District Staff | | | | |
|---|---|---|---|---|
| | **Employee Race** | | | |
| **Employee Classification** | **Black** | **White** | **Other-Race** | **Total** |
| Certified Staff | 2 (100%) | 0 (0%) | 0 (0%) | 2 |
| Non-Certified Staff | 7 (47%) | 8 (53%) | 0 (0%) | 15 |
| Total | 9 (53%) | 8 (47%) | 0 (0%) | 17 |

(*See* Ex. 1-C, 2023-2024 LCSD Staff Demographics).

The Plaintiffs alleged in their Complaint that, at the time of filing in 1992, Lewisville School District employed 45 certified staff members, of which 38 (84%) were white and seven (16%) were Black. *See* Doc. 1, Complaint, ¶ 7. The Complaint alleged that three of the seven Black teachers were assigned to elementary positions, and four worked at the high school level, with two of the four Black high school teachers employed as a coach and a special education teacher, respectively. *Id*. The Complaint further alleged that, in 1992, Lewisville School District employed approximately 30 classified staff members as aides, secretaries, janitors, bus drivers, and cafeteria workers: three secretaries assigned to work in the administrative office were all white, there were three white aides and seven Black aides, there were three white bus drivers and one Black bus driver, there were six Black janitors and one white janitor, and there were five Black cafeteria workers and one white cafeteria worker. *Id*. at ¶ 8.

The District's percentage of Black certified staff in 2023-2024 was 38% at LCES and 35% at LCHS (*see* Ex. 1, Anderson Affidavit, ¶ 26; Ex. 1-C, 2023-2024 LCSD Staff Demographics), a significant increase from the District's 1992 certified staffing percentage of 16%. *See* Doc. 1, Complaint, ¶ 7. Given the small numbers of staff (25 employees are assigned to LCES and 24 employees are assigned to LCHS), Superintendent Anderson believes the faculty is fairly balanced, as there are only six more white employees than Black employees at LCES and only seven more white employees than Black employees at LCHS. (*See* Ex. 1, Anderson Affidavit, ¶¶ 26, 27). During the 2023-2024 school year, LCES's student body was 63.0% Black, and LCHS's student body was 61.6% Black. *Id*. at ¶¶ 30, 33. Superintendent Anderson believes the racial composition of LCSD faculty is reasonably proportional to LCSD student enrollment percentages, given various factors including the small teaching staff, declining enrollment of all students, movement

of white students to other districts via school choice and other transfer mechanisms, and the District's general difficulties in hiring teachers, regardless of race. *Id*. at ¶ 28.

Finally, the 1993 Decree directed LCSD to "post conspicuous notices of all future employment vacancies in each school building office for a period of not less than fifteen (15) days prior to filling the vacancy," which notices were to include "the title of the position, its duties and responsibilities, qualifications desired, . . . the date by which the position will be filled, [and] the objective and subjective employment criteria which must be met in order for an applicant to be deemed qualified." *See* Doc. 9, 1993 Decree, at ¶ 9. Vacancies are posted in all District building offices, on the District's website, and on the District's social media pages. (*See* Ex. 1, Anderson Affidavit, ¶ 12). The District also advertises job openings in the local newspaper and on the website of the Arkansas Association of Educational Administrators. *Id*. The physical on-campus posts and the website posts are up for at least fifteen (15) days unless filling the vacancy is an emergency. *Id*.

### C.    Student Assignment

The Decree further prohibited LCSD from "engaging in any policies, practices, customs or usages of racial discrimination in any school operation including, but not limited to . . . student assignments, and the treatment of Black and other minority pupils within the school system." *See* Doc. 9, 1993 Decree, ¶ 4. The 1993 Decree directed the District to "endeavor in good faith to eliminate any student placement or assignment policy or practice such as 'tracking' [or] 'assignment by ability grouping.'" *Id.* at ¶ 10.

Total student enrollment for 2023-2024 was 483 students, of which 301 (62.3%) were Black. (*See* Ex. 1, Anderson Affidavit, ¶ 34; *see also*, Ex. 1-E, LCES Enrollment Report, August 31, 2023, and Ex. 1-F, LCHS Enrollment Report, August 31, 2023).

Students enrolled in grades K-6 attend Lafayette County Elementary School ("LCES"). (*See* Ex. 1, Anderson Affidavit, at ¶¶ 8, 30). For the 2023-2024 school year, based on an enrollment count done on August 31, 2023, LCES enrolled 246 students, of which 155 students (63.0%) were Black. (*See* Ex. 1, Anderson Affidavit, at ¶ 30; Ex. 1-E, LCES Enrollment Report). Class assignments are determined by the LCES principal and his or her staff conducting a random draw, with slight adjustments made to consider distribution of students by race and gender. (*See* Ex. 1, Anderson Affidavit, at ¶ 31). Stacie Mitchell-Gweah (Black female) was LCES's principal during the 2023-2024 school year; LCES's principal for the 2024-2025 school year is Adam Minter (white male). *Id.* at ¶ 32.

Students enrolled in grades 7-12 attend Lafayette County High School ("LCHS"). (*See* Ex. 1, Anderson Affidavit, ¶¶ 8, 33). LCHS's principal for 23-24 and 24-25 is Tony Hartsfield (Black male). *Id.* at ¶ 37.  For the 2023-2024 school year, LCHS enrolled 237 students, of which 146 students (61.6%) were Black. (*See* Ex. 1, Anderson Affidavit, ¶ 33; Ex. 1-F, LCHS Enrollment Report, August 31, 2023). Due to the small size of the student body, LCHS offers two classes for each of the four core subjects. (*See* Ex. 1, Anderson Affidavit, at ¶ 35). One of these classes is usually an advanced placement or honors class in the particular subject area. *Id.* The District also uses Arkansas Virtual Academy for some advanced classes. *Id.* Class assignments are determined by student request, the student's assignment to advanced placement/honors or regular classes, and where the class fits on their schedule. *Id.* at ¶ 36. Assignments to elective classes are based upon students' elective selections and available space in each elective course. *Id.* If a single student requests a course, the District tries to honor that request by using Virtual Arkansas. *Id.*  All classrooms are desegregated, and class assignments are made on a non-discriminatory basis. (*See* Ex. 1, Anderson Affidavit, ¶ 38).

LCSD follows the State of Arkansas's Smart Core and Core curricula. (*See* Ex. 1, Anderson Affidavit, ¶ 39; *see also*, Ex. 1-D, Student Policies 4.45 and 4.45.1, pp. 156-168). The District also pays for LCSD students to obtain college credit through the University of Arkansas at Hope. (*See* Ex. 1, Anderson Affidavit, ¶ 40). Regarding promotion of students, all students promoted from 8th grade shall be classified as freshmen. (*See* Ex. 1, Anderson Affidavit, ¶ 41; Ex. 1-D, Student Policy 4.45.2, p. 169). All students with 5.5 or more credits shall be classified as sophomores. *Id*. All students with ten or more credits will be considered juniors, and all students with 16 credits will be considered seniors. *Id*. LCSD requires a student to earn 24 credits in order to graduate. *Id*.

### D.    Special Education

The 1993 Decree directed the District to "endeavor in good faith to eliminate . . . disproportionate placement in special education." *See* Doc. 9, 1993 Decree, ¶ 10. At the time the 1993 Decree was approved, LCSD had a Black student population of 58%, and Black students accounted for 70% of the students placed into special education classes. *Id*. at ¶ 11.

LCSD follows all federal and state statutes, rules, and regulations regarding providing special education services. (*See* Ex. 1, Anderson Affidavit, ¶ 42). The District's special education policy is included in Policy 4.49 and has been in place since July 2008. *Id*. at ¶ 43. Policy 4.49 states as follows: "[i]n accordance with the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act, and Arkansas Statutes, the district shall provide a free and appropriate public education and necessary related services to all children with disabilities" who either reside within the District's boundaries or reside outside of the District's boundaries but are enrolled in the District. (*See* Ex. 1, Anderson Affidavit, ¶ 43; Ex. 1-D, Student Policy 4.49, p. 184). The policy specifies the District's intent to "ensure that students who are disabled within the definition of Section 504 . . . are identified, evaluated,

and provided with appropriate educational services." (*See* Ex. 1, Anderson Affidavit, ¶ 44; Ex. 1-D, Student Policy 4.49, p. 184). Additionally, the District has procedures for identification, evaluation, placement, and delivery of services to children who are eligible for services under IDEA. (*See* Ex. 1, Anderson Affidavit, ¶ 45). Students who are evaluated and determined not to be eligible for services under the IDEA are not classified as special education students. *Id.* at ¶ 46. The Board, via policy 4.49, directs the superintendent to "ensure procedures are in place for the implementation of special education services and that programs are developed to conform to the requirements of state and federal legislation." (*See* Ex. 1, Anderson Affidavit, ¶ 47; Ex. 1-C, Student Policy 4.49, p. 184).

For the 2023-2024 school year, LCSD provided special education services to 123 students, as shown in the chart below:

| Grade | Students Receiving Special Education Services 2023-2024 | | | | | | |
|---|---|---|---|---|---|---|---|
| | Black | | | Non-Black | | | Total |
| | Male | Female | Total | Male | Female | Total | |
| Kindergarten | 0 | 2 | 2 | 1 | 0 | 1 | 3 |
| 1 | 1 | 6 | 7 | 3 | 1 | 4 | 11 |
| 2 | 1 | 7 | 8 | 3 | 2 | 5 | 13 |
| 3 | 6 | 4 | 10 | 3 | 0 | 3 | 13 |
| 4 | 4 | 1 | 5 | 5 | 2 | 7 | 12 |
| 5 | 2 | 1 | 3 | 1 | 2 | 3 | 6 |
| 6 | 2 | 0 | 2 | 1 | 4 | 5 | 7 |
| 7 | 7 | 1 | 8 | 2 | 4 | 6 | 14 |
| 8 | 1 | 0 | 1 | 7 | 4 | 11 | 12 |
| 9 | 0 | 1 | 1 | 2 | 1 | 3 | 4 |
| 10 | 6 | 2 | 8 | 1 | 1 | 2 | 10 |
| 11 | 5 | 2 | 7 | 2 | 2 | 4 | 11 |
| 12 | 4 | 3 | 7 | 0 | 0 | 0 | 7 |

| Totals | 39 | 30 | 69 | 31 | 23 | 54 | 123 |
|---|---|---|---|---|---|---|---|

(*See* Ex. 1, Anderson Affidavit, ¶ 48; Exhibit "1-G", 2023-2024 Special Education Student Demographics). The District's Black student population is now 62.3% (*see* Ex. 1, Anderson Affidavit, ¶ 34), but Black students accounted for only 56.1% of special education students during the 2023-2024 school year. *Id.* at ¶ 49. Superintendent Anderson believes that the District has operated in good faith regarding its special education program and that Black students are no longer disproportionately placed in special education. *Id.* at ¶ 50.

**E.      School Programs, Activities, Assignments, and Rewards**

The 1993 Decree generally requires the District to "conduct[] and extend[]" all "school programs, activities, assignments, and rewards . . . pursuant to an affirmative inclusion policy which maximizes bi-racial pupil and staff participation." *See* Doc. 9, 1993 Decree, ¶ 12. Specifically, the District was required to "desegregate[] and integrate[]" all "classes, programs, and/or activities of the district . . . in fact including, but not limited to, gifted and talented classes, advanced placement classes, the cheerleaders, basketball teams, Beta type clubs and referrals to Governor's school, Boy's State, and Girl's State." *See* Doc. 9, 1993 Decree, ¶ 12.

LCSD offers the following athletic and extracurricular activities for students in grades 7-12: band, baseball, basketball, cheerleading, Educators Rising, football, Future Business Leaders of America, Future Family, Career, and Community Leaders of America, Future Farmers of America, gifted and talented, National Honor Society, National Junior Honor Society, softball, student council, track, trap shooting, volleyball, and yearbook. (*See* Ex. 1, Anderson Affidavit, ¶ 51). Participation in these activities is determined by the number of students interested and, where applicable, eligibility as determined by the Arkansas Activities Association. *Id.* at ¶ 52. Race is not a factor in the selection processes for any District-sponsored activities, athletics, or other

extracurricular program. *Id*. at ¶ 53. For athletics, all interested students are allowed to participate. *Id*. at ¶ 54. Tryouts are held for cheerleaders, and judges who are not affiliated with the school district are brought in to avoid any suggestion of favoritism. *Id*. at ¶ 55. The cheerleading squad is limited to between 12 and 15 students in accordance with Arkansas Activities Association rules. *Id*. During both the 2023-2024 and 2024-2025 school years, each student who tried out made the squad because there wasn't that much interest. (*See* Ex. 1, Anderson Affidavit, ¶ 55). Any student who signs up for band class becomes a member of the band. *Id*. at ¶ 56. LCSD applies the membership criteria established by the national chapters of the National Honor Society and National Junior Honor Society in selecting students for those clubs. *Id*. at ¶ 57. The LCHS homecoming court is selected by student vote. *Id*. at ¶ 58. Selections for Governor's school, Boy's State, and Girl's State are made by the high school principal and counselor after reviewing the guidelines for those programs and identifying students who meet the applicable grade point average requirements. *Id*. at ¶ 59. Students are required to get three letters of recommendation from their teachers to be considered for recommendation to these programs. *Id*. For Governor's School, students are also required to write a short essay discussing why they feel they should be chosen to participate. (*See* Ex. 1, Anderson Affidavit, ¶ 59).

> **F.     Student Discipline**

The 1993 Decree also required the District to "establish and implement discipline policies which do not adversely and disparately impact in practice and implementation upon Black pupils." *See* Doc. 9, 1993 Decree, ¶ 14. The 1993 Decree defined "discipline" as "inclusive of any adverse consequence imposed by the district upon a student." *Id*. The District was also required to keep "appropriate records" regarding all students' discipline. *Id*. The District was directed to "initiate an in-service training program in order to enhance the capacity and effectiveness of teachers in the

handling and teaching of children from differing racial and socio-economic backgrounds, and in order to promote understanding of the expectations of an equitable, fully integrated school system." *Id*. at ¶ 15.

The District has adopted comprehensive student policies developed by the Arkansas School Boards Association. (*See* Ex. 1, Anderson Affidavit, ¶ 29; Ex. 1-D, Student Policies). Policy 4.17 governs student discipline. (*See* Ex. 1, Anderson Affidavit, ¶ 60; Ex. 1-D, Student Policies, p. 62). Policy 4.18 sets forth specific prohibited conduct. (*See* Ex. 1, Anderson Affidavit, ¶ 60; Ex. 1-D, Student Policies, p. 65). Policy 4.30 covers student suspensions, and Policy 4.31 governs student expulsions. (*See* Ex. 1, Anderson Affidavit, ¶ 60; Ex. 1-D, Student Policies, pp. 104-112). Additionally, the District also has specific policies covering the following: student conduct while traveling to and from school or a school activity (Policy 4.19), disruptions of the educational environment (Policy 4.20), student assault or battery (Policy 4.21), weapons and dangerous instruments (Policy 4.22), tobacco and related products (Policy 4.23), alcohol (Policy 4.24), and gangs and gang activity (Policy 4.26), among others. (*See* Ex. 1, Anderson Affidavit, ¶ 60; Ex. 1-D, Student Policies, pp. 67-83). The discipline policies apply equally to all students, regardless of race. (*See* Ex. 1, Anderson Affidavit, ¶ 61).

The District keeps records of student disciplinary actions in each individual student's e-School record, as required by the Arkansas Department of Education. (*See* Ex. 1, Anderson Affidavit, ¶ 62). The District also compiles all instances of discipline involvement (*i.e.* the infraction involved) and discipline with action assigned (*i.e.* the punishment administered). (*Id.*; *see also*, Exhibit "1-H", Discipline Demographics Report). During the 2023-2024 school year, the District noted 438 disciplinary events. (*See* Ex. 1, Anderson Affidavit, ¶ 63; Ex. 1-H, Discipline Demographics Report).

17

| | Student Race and Gender | | | | | | | | Totals |
|---|---|---|---|---|---|---|---|---|---|
| | Black | | White | | Hispanic | | Two or More Races | | |
| Infraction | Male | Female | Male | Female | Male | Female | Male | Female | |
| Abuse of Employee | 1 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| Attendance | 9 | 12 | 5 | 1 | 0 | 0 | 1 | 0 | 28 |
| Bullying | 3 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 5 |
| Cell phone | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 |
| Class disruption | 36 | 20 | 10 | 1 | 1 | 0 | 2 | 1 | 71 |
| Disorderly conduct | 21 | 8 | 1 | 1 | 0 | 1 | 0 | 0 | 32 |
| Drugs | 3 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 5 |
| Fighting | 34 | 22 | 8 | 5 | 1 | 0 | 2 | 0 | 72 |
| Habitual misbehavior | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Harassment | 3 | 1 | 2 | 0 | 0 | 0 | 0 | 0 | 6 |
| Inappropriate activity | 2 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 3 |
| Inappropriate contact | 6 | 3 | 2 | 1 | 0 | 0 | 0 | 0 | 12 |
| Instigating | 10 | 9 | 1 | 1 | 1 | 0 | 1 | 0 | 23 |
| Insubordination | 15 | 22 | 3 | 0 | 0 | 0 | 0 | 1 | 41 |
| Knife | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 |
| Lying | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Obscene material | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Other | 4 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 5 |
| Personal Electronic Device | 2 | 2 | 0 | 0 | 1 | 0 | 1 | 0 | 6 |
| Physical attack / harm on staff | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 3 |
| Physical attack / harm on student | 16 | 9 | 7 | 2 | 1 | 0 | 1 | 0 | 36 |
| Profanity | 14 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 16 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Sexual harassment | 2 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 3 |
| Stealing/Theft | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Tardy | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 |
| Technology use violation | 1 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 4 |
| Terroristic threats | 5 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 8 |
| Threaten teacher | 2 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 4 |
| Tobacco / e-cigarette / vaping devices | 7 | 5 | 9 | 3 | 1 | 0 | 0 | 1 | 26 |
| Transportation | 7 | 1 | 4 | 0 | 0 | 0 | 0 | 0 | 12 |
| Vandalism | 3 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 5 |
| Weapon | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Totals by Race and Gender | 211 | 126 | 62 | 16 | 8 | 1 | 11 | 3 | 438 |
| Total by Race | 337 (76.9%) | | 78 (17.8%) | | 9 (2.1%) | | 14 (3.2%) | | 438 |

Potential results following a student's commission of an infraction such as those described above may include corrective action steps (such as counseling), detention, corporal punishment, in-school suspension, out-of-school suspension, expulsion, or, if the infraction occurs on a school bus, a bus suspension. (*See* Ex. 1, Anderson Affidavit, ¶ 64). Corrective actions are not considered discipline and are not documented as such. *Id.* During the 2023-2024 school year, the District noted 339 disciplinary actions. (*Id.* at ¶ 65; Ex. 1-H, Discipline Demographics Report).

| | Student Race and Gender | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|
| | Black | | White | | Hispanic | | Two or More Races | | |
| **Discipline Action Assigned** | Male | Female | Male | Female | Male | Female | Male | Female | |
| Bus Suspension | 7 | 1 | 4 | 0 | 0 | 0 | 0 | 0 | 12 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Corporal Punishment | 24 | 20 | 8 | 4 | 2 | 0 | 1 | 0 | 59 |
| Detention | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| In-School Suspension | 70 | 48 | 26 | 8 | 3 | 1 | 3 | 1 | 160 |
| OCS – On Campus Suspension | 21 | 15 | 10 | 2 | 0 | 0 | 3 | 1 | 52 |
| Out-of-School Suspension | 18 | 19 | 6 | 2 | 0 | 0 | 2 | 1 | 48 |
| Parent / Guardian conference | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Warning | 3 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 5 |
| Totals | 143 | 107 | 55 | 16 | 5 | 1 | 9 | 3 | 339 |
| Total by Race | 250 (73.7%) | | 71 (20.9%) | | 6 (1.8%) | | 12 (3.6%) | | 339 |

During the 2023-2024 school year, 48 students had only one occurrence of out-of-school suspension, including 18 Black males (37.5%) and 19 Black females (39.6%), and Black students accounted for 77.1% of all out-of-school suspensions. (*See* Ex. 1, Anderson Affidavit, ¶ 66; Ex. 1-H, Discipline Demographics Report). Also, during the 2023-2024 school year, the number of students who had multiple occurrences of out-of-school suspension were as follows: 11 Black males, 11 Black females, 1 male of two or more races, and 1 white male. (*See* Ex. 1, Anderson Affidavit, ¶ 67; Ex. 1-H, Discipline Demographics Report).

    As noted above, the District's Black student population during the 2023-2024 school year was 62.3%. (*See* Ex. 1, Anderson Affidavit, ¶ 34). As shown in the charts attached in Exhibit 1-H, Black students accounted for 76.9% of all disciplinary events and 73.7% of all disciplinary actions. (*See* Ex. 1, Anderson Affidavit, ¶ 68). The report notes that "students with multiple occurrences of [one] incident [category] are counted only once per incident code." (*See* Ex. 1, Anderson Affidavit, ¶ 69; Ex. 1-H, Discipline Demographics Report). However, the report does not reflect

how often a single individual student was subject to multiple disciplinary actions for violating different incident codes. (*See* Ex. 1, Anderson Affidavit, ¶ 70). Additionally, the District found it noteworthy that no students were expelled during the 2023-2024 school year. *Id*. at ¶ 71.

The District ensures that all employees attend all state-mandated trainings regarding student discipline. *Id*. at ¶ 72. The District's handbook committees are comprised of school employees, parents, and students, which give parents and students the opportunity to discuss revisions to current discipline policies. *Id*.

### G.     Student Retention

The 1993 Decree noted that the then-Lewisville School District's retention rate "for African American students in kindergarten and in first grade [was] disproportionate to the numbers of the African American student population, being that African American students constitute[d] 86% of the students retained in kindergarten and 77% of the students retained in first grade." *See* Doc. 9, 1993 Decree, ¶ 17. The 1993 Decree imposed upon the District "a heavy burden, characterized by objective criteria, in justifying the retention of any student." *Id*. The Decree also stated that "racial disproportionality shall not be tolerated unless strong evidence supports the necessity therefore." *Id*.

LCSD has adopted Policy 4.55 regarding Student Promotion and Retention. (*See* Ex. 1, Anderson Affidavit, ¶ 73; Ex. 1-D, Student Policy 4.55, pp. 195-202). The policy prohibits "social promotion," in accordance with state law. (*See* Ex. 1, Anderson Affidavit, ¶ 73; Ex. 1-D, Student Policy 4.55, p. 195). The District is required to evaluate each student annually and to notify parents if a student may be retained or required to retake a course. *Id*. The District's policy includes a detailed process for each grade, taking into consideration a variety of factors including "age, maturity, motor coordination, capacity for learning, and academic progress." *Id*. In all cases,

decisions regarding promotion or retention of a student "shall be made on the basis of which grade placement provides the student a better chance of progressing in his/her educational development." *Id*. The retention policy also provides for a conference to be held if there is any "doubt concerning the promotion or retention of a student or his/her required retaking of a course," which should include the principal, student's teachers, school counselor, a 504/special education representative (if applicable), and the student's parents or guardians. (*See* Ex. 1, Anderson Affidavit, ¶ 73; Ex. 1-D, Student Policy 4.55, p. 196). Finally, each LCSD student is required by State law to have a student success plan (SSP) that is reviewed and updated annually. (*See* Ex. 1, Anderson Affidavit, ¶ 74; Ex. 1-D, Student Policy 4.55, p. 196). LCSD's SSPs are made in conjunction with the student and his or her parent. *Id*.

At the elementary level, there may be some retention on an individual basis, in rare cases. (*See* Ex. 1, Anderson Affidavit, ¶ 75). The principal has the final authority for promotion and retention decisions for students in grades Kindergarten through eighth. *Id*. Specifically, students in Kindergarten through second grade will be promoted "unless there are indications that would prohibit them from coping with the academic expectations of the next grade level." (*See* Ex. 1, Anderson Affidavit, ¶ 76; Ex. 1-D, Policy 4.55, p. 196). Students in grades 3-8 will be promoted to the next grade level with a passing grade of 60 in three of the four core classes: language arts, math, science, and social studies. *Id*. During the 2023-2024 school year, one Black student was retained in first grade, and the parent agreed with the retention decision. (*See* Ex. 1, Anderson Affidavit, ¶ 77).

Retention is not used for LCHS students. (*See* Ex. 1, Anderson Affidavit, ¶ 78). For students who do not receive credit for a particular class, the District offers credit recovery during the school year and summer school. *Id*. Students in grades 9-12 must attain the designated number

of credit units prior to being promoted to the next grade level and classification. (*See* Ex. 1, Anderson Affidavit, ¶ 79).

### H.      Reporting and Monitoring

The 1993 Decree required the District to make "annual reports of their progress" regarding the terms and conditions of the consent decree, with the reports to be delivered to counsel for the plaintiffs on or before December 15 for three years, in 1993, 1994, and 1995. Doc. 9, 1993 Decree, ¶ 18. Superintendent Anderson does not have knowledge of these particular reports but assumes that they were timely submitted because she is not aware of any complaint from the Plaintiffs that they did not receive the reports. (*See* Ex. 1, Anderson Affidavit, ¶ 80).

## IV.      CONCLUSION

For the reasons set forth herein and in the accompanying motion, the Defendant, Lafayette County School District, prays that the Court issue an order finding the District unitary and dismissing this case with prejudice.

Respectfully submitted,

Whitney F. Moore (Ark. Bar No. 2009193)
WHITNEY F. MOORE, P.A.
23 Huntington Road
Little Rock, Arkansas 72227
Telephone: (870) 818-5490
Email: whitney@aprobertslaw.com

*Attorney for Lafayette County School District*