IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MARY TURNER; LUCY CHEATHAM; MARY ROSE; OBIE SASSER; BARBARA DUDLEY; IDA DUDLEY; ROSIE BLAIR; JOHNNY BLAIR; ROBERT WISE; and MILDRED THOMPSON — PLAINTIFFS

v. Case No. 4:92-cv-04040

LAFAYETTE COUNTY SCHOOL DISTRICT; LARRY HUDSON; HOLLIS SASSER; HARRY SMITH; LESLIE NUTT; STEVE GROVES; CAROLYN MOSS; and JOHNNY ROSS — DEFENDANTS

# **ORDER**

Before the Court is Defendant Lafayette County School District's ("LCSD") Motion for Declaration of Unitary Status. (ECF No. 112). Plaintiffs filed a response in opposition to the instant motion. (ECF No. 118). LCSD and Plaintiffs subsequently filed a status report stating that Plaintiffs have withdrawn their objection and stipulating that LCSD should be declared unitary. (ECF No. 119). The Court finds the matter ripe for consideration.

## I. BACKGROUND

This lawsuit was filed in April 1992 by a staff member and parents and guardians of minor African American students in the former Lewisville School District No. 1.[1] In March 1993, the Court dismissed the case with prejudice subject to the terms of a Consent Decree ("1993 Decree"). (ECF Nos. 9 & 10). The Court retained jurisdiction to reopen the action upon cause shown that

[1] Plaintiffs' claims in this case were originally asserted against Lewisville School District No. 1 and other defendants. On November 23, 2015, the Court directed the Clerk of Court to substitute LCSD in place of Lewisville School District No. 1 because Lewisville School District No. 1 had been consolidated with the Stamps School District to form the Lafayette County School District. (ECF No. 26). The Court found that the substitution allowed the continuation of the case because Lewisville School District No. 1 had ceased to exist and had been succeeded by LCSD.

the settlement has not been completed and that a party wishes that the Court enforce the 1993 Decree. (ECF No. 10).

The 1993 Decree enjoins Defendants from "denying any of the plaintiffs, students, faculty, and staff any applicable rights provided for by the Fourteenth Amendment and 42 U.S.C. §§ 1981, 1983, and 2000(e)." (ECF No. 9, at ¶ 2). The 1993 Decree also enjoins Defendants "from allowing a racially discriminatory environment to exist within the school district." (ECF No. 9, at ¶ 3). Overall, the 1993 Decree addresses the following areas: (1) elimination of discriminatory policies and practices overall; (2) elimination of a racially discriminatory environment; (3) faculty and staff assignments; (4) student assignments; (5) special education; (6) school programs, activities, assignments, and rewards; (7) student discipline; and (8) student retention. (ECF No. 9).

On January 17, 2019, the Court modified the 1993 Decree to explicitly prohibit the segregative inter-district transfer of students from LCSD to other school districts, unless such a transfer is requested for education or compassionate purposes and is approved by LCSD's school board on a case-by-case basis. (ECF No. 72). This modification, requested by LCSD, was in light of Arkansas' school choice law ("the 2017 Act"), which required schools claiming a conflict with participating in school choice to show that it is subject to an active and enforceable desegregation court order or plan that "explicitly limits the transfer of students between school districts." (ECF No. 72, at 10).

On September 18, 2024, LCSD filed the instant motion seeking declaration of unitary status. (ECF No. 112). LCSD contends that it has complied with the Court's 1993 Decree since the 1993-1994 school year and moves the Court to find LCSD unitary and dismiss this case. (ECF No. 113). On November 18, 2024, Plaintiffs filed a response opposing LCSD's motion for declaration of unitary status, in which Plaintiffs contended that they did not object to unitary status

in any area except for student discipline. (ECF No. 118). Plaintiffs stated that they were working with LCSD on a proposal to address student discipline and would withdraw their objection if LCSD's board approved said proposal. (ECF No. 118).

On November 20, 2024, the parties filed a Joint Status Report in which the parties have agreed to the following: (1) LCSD will eliminate its use of corporal punishment to discipline students as soon as reasonably possible following an order granting its unitary status; (2) Plaintiffs will remove their objection to unitary status for LCSD and stipulate that the Court should declare LCSD fully unitary; and (3) LCSD will make a one-time payment of $3,500.00 to Plaintiff's counsel for attorney's fees, paid within one school week of entry of an order by the Court granting unitary status. (ECF No. 119, at 2).

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 60(b)(5) permits a party to obtain relief from a judgment or order if, among other things, 'applying [the judgment or order] prospectively is no longer equitable." *Horne v. Flores*, 557 U.S. 433, 447 (2009). "From the very first, federal supervision of local school systems was intended as a temporary measure to remedy past discrimination." *Bd. Of Educ. of Oklahoma City Pub. Sch. v. Dowell*, 498 U.S. 237, 247 (1991). The necessary transition away from segregated schools inherently recognizes that there may come a time when a school district's compliance with a desegregation decree would permit dissolution of that decree. *See id*. at 248 (citation omitted); *see also Freeman v. Pitts*, 503 U.S. 467, 486 (1992) (noting that a district court's remedial control over a school district can eventually be withdrawn upon achievement of unitary status). "[T]he longer an injunction or consent decree stays in place, the greater the risk that it will improperly interfere with a State's democratic processes." *Horne*, 557 U.S. at 453. Courts may "relinquish continuing jurisdiction to ensure compliance with a

desegregation consent decree when the moving party has demonstrated full compliance." *Smith v. Bd. of Educ. of Palestine-Wheatley Sch. Dist.*, 769 F.3d 566, 572 (8th Cir. 2014).

## III. DISCUSSION

A school district seeking a declaration of unitary status and relief from a court ordered desegregation decree must first establish that it has "complied in good faith with the desegregation decree since it was entered," and then demonstrate that the "vestiges of past discrimination ha[ve] been eliminated to the extent practicable." *Little Rock Sch. Dist. v. Arkansas*, 664 F.3d 738, 744 (8th Cir. 2011).

### A. Good Faith Compliance

Courts evaluate "school districts' objective compliance with the terms of their respective plans in the same fashion as [they] would evaluate compliance with the terms of any contract, simply by 'applying the terms of [the] contract between the parties to facts that have arisen since its creation." *Id.* at 744-45 (quoting *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 83 F.3d 1013, 1017 (8th Cir. 1996)). The Supreme Court, however, has explained that the "good faith" aspect of compliance with a desegregation decree is more specific than in contract law, requiring the school district to demonstrate:

> to the public and to the parents and students of the once disfavored race, its good-faith commitment to the whole of the court's decree and to the provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance.

*Freeman*, 503 U.S. at 491.

LCSD contends that it has complied in good faith with its desegregation obligations since the 1993 Decree was entered. (ECF No. 113, at 3). LCSD attached an affidavit to its motion from current LCSD superintendent, Opal Anderson, who has been employed by LCSD since 1989 and has held the superintendent position since July 1, 2022. (ECF No. 113-1). Superintendent

Anderson testifies that she is familiar with the 1993 Decree and that she believes LCSD has complied with the requirements of the 1993 Decree since its entry. (ECF No. 113-1, at ¶ 6-7). Superintendent Anderson further testifies that since 1993 LCSD has not "den[ied] any of the plaintiffs, students, faculty, [or] staff any applicable [constitutional] rights" or "allow[ed] a racially discriminatory environment to exist." (ECF Nos. 113-1, at ¶ 9; 2, at ¶ 2-3).

LCSD contends, and Superintendent Anderson testifies, that LCSD adopted policies in compliance with the 1993 Decree's directive. (ECF Nos. 113, at 4; 113-1, at ¶10). The 1993 Decree's requirements and LCSD's corresponding policies are as follows:

**Affirmative Inclusion Policy.** The 1993 Decree required LCSD to adopt an "affirmative inclusion" policy to "promote pupil and staff integration rather than one of passive acceptance of desegregation." (ECF No. 9, at ¶ 12-13). LCSD adopted its personnel policies governing licensed employment ("Policy 3.19") and classified personnel employment ("Policy 8.13") in April 2003 and April 2004, respectively. Both policies state that LCSD "is an equal opportunity employer and shall not discriminate on the grounds of race, color, religion, national origin, sex, pregnancy, sexual orientation, gender identity, age, disability, or genetic information." (ECF Nos. 113, at 4; 113-2, at 61; 113-3, at 36). LCSD also adopted a student policy to address equal educational opportunity ("Policy 4.11") in September 2003. Policy 4.11 states that "no student in the [LCSD] shall, on the grounds of race, color, religion, national origin, sex, sexual orientation, gender identity, age, or disability be excluded from participation in, or denied the benefits of, or subjected to discrimination under any educational program or activity sponsored by [LCSD]." (ECF Nos. 113, at 4; 113-5, at 41).

**Faculty Policy.** The 1993 Decree prohibited LCSD from "engaging in any policies, practices, customs or usages of racial discrimination in any school operation, including . . . faculty

assignments . . . ." (ECF No. 9, at ¶ 4). The 1993 Decree also required LCSD to develop an "objective, non-discriminatory, job-related employment criteria in the recruitment, selection, placement, promotion, pay, demotion, evaluation, and/or termination of staff members." (ECF No. 9, at ¶ 5). LCSD's Policy 3.19 and 8.13 require prospective employees to fill out an application form and complete a background check. (ECF Nos. 113-2, at 60; 113-3, at 35). Additionally, Superintendent Anderson testifies that LCSD uses objective, non-discriminatory criteria when considering applicants, promotions, demotions, evaluations, and terminations. (ECF No. 113-1, at ¶¶ 14-19, 21-22). The 1993 Decree also required LCSD to "develop and implement plans for increasing the proportion of Black staff" and obtain a "balanced faculty, which bears a reasonable relationship to the proportion of Black pupils within the district." (ECF No. 9, at ¶ 5). Superintendent Anderson testifies that LCSD has maintained a non-discriminatory hiring policy for both certified and classified staff since 2004, and that, as a result, Black employees hold various positions throughout the district. (ECF No. 113-1, at ¶ 10). Finally, the 1993 Decree directed LCSD to "post conspicuous notice of all future employment vacancies" with information about the job title, duties, and qualifications. (ECF No. 9, at ¶ 9). Superintendent Anderson testifies that LCSD posts all vacancies in the LCSD offices, website, and social media pages, as well as in the local newspaper and Arkansas Association of Educational Administrators website. (ECF No. 113-1, at ¶ 12).

**Student Policy.** The 1993 Decree prohibited LCSD from engaging in policies or practices of racial discrimination in student assignments and directed LCSD to "endeavor in good faith to eliminate any student placement or assignment policy . . . such as 'tracking' [or] 'assignment by ability grouping.'" (ECF No. 9, at ¶¶ 4, 10). Superintendent Anderson testifies that class assignments for the Lafayette County Elementary School ("LCES") are determined by a random

draw, with slight adjustments made to consider distribution of students by race and gender. (ECF No. 113-1, at ¶ 31). At the Lafayette County High School ("LCHS"), class assignments are determined by student request, the student's assignment to advanced placement or regular classes, and where classes fit in their schedule. (ECF No. 113-1, at ¶ 35). Assignments to elective classes are determined by students' elective selections and available space in each elective course. (ECF No. 113-1, at ¶ 36).

**Special Education Policy.** The 1993 Decree directed LCSD to "endeavor in good faith to eliminate disproportionate placement in special education." (ECF No. 9, at ¶ 10). LCSD enacted a special education policy ("Policy 4.49") in 2008, which follows the federal and state statutes, rules, and regulations regarding providing special education services. (ECF No. 113-1, at ¶¶ 42-43). Pursuant to Policy 4.49, LCSD has procedures for identification, evaluation, placement, and delivery services to children who are eligible for services under the Individuals with Disabilities Education Act ("IDEA"). (ECF No. 113-1, at ¶ 45). Students who are determined not to be eligible for services under the IDEA are not classified as special education students. (ECF No. 113-1, at ¶ 46).

**School Programs and Extracurricular Policy.** The 1993 Decree required LCSD to conduct all "school programs, activities, assignments, and rewards" pursuant to an affirmative inclusion policy and to "desegregate[] and integrate[]" all "classes, programs, and/or activities . . . ." (ECF No. 9, at ¶ 12). Superintendent Anderson testifies that participation in LCSD athletic and extracurricular activities is determined by the number of students interested and eligibility as determined by the Arkansas Activities Association. (ECF No. 113-1, at ¶ 52). She further testifies that race is not a factor in the selection process for any LCSD-sponsored activities, athletics, or extracurricular programs. (ECF No. 113-1, at ¶ 53). All interested students are allowed to

participate in LCSD athletics, though some sports have limited spots and tryouts. (ECF No. 113-1, at ¶ 54). Any student who signs up for band class becomes a band member. (ECF No. 113-1, at ¶ 56). Participation in other activities, such as the National Honors Society and Governor's School, is permitted if students meet the program guidelines. (ECF No. 113-1, at ¶¶ 57, 59).

**Student Discipline Policy.** The 1993 Decree required LCSD to "establish and implement discipline policies which do not adversely and disparately impact in practice and implementation upon Black pupils." (ECF No. 9, at ¶ 14). In compliance, LCSD adopted several comprehensive student policies developed by the Arkansas School Boards Association, including on student discipline ("Policy 4.17"), prohibited conduct ("Policy 4.18"), student suspensions ("Policy 4.30"), and student expulsions ("Policy 4.31"). (ECF Nos. 113-1, at ¶ 60; 113-5). LCSD also adopted specific policies covering, for example, disruptions of the educational environment ("Policy 4.20) and student assault or battery ("Policy 4.21"), among others. (ECF No. 113-1, at ¶ 60). Superintendent Anderson testifies that LCSD's discipline policies apply equally to all students. (ECF No. 113-1, at ¶ 61). The 1993 Decree also required LCSD to keep records regarding student discipline and initiate a training program to enhance the "effectiveness of teachers in handling and teaching of children from differing racial and socio-economic backgrounds[.]" (ECF No. 9, at¶ 14-15). In fulfillment of the record keeping requirement, LCSD keeps records of each individual student's disciplinary actions and compiles all instances of discipline involvement and punishment. (ECF No. 113-1, at ¶ 62). LCSD also requires that all employees attend all state-mandated training regarding student discipline. (ECF No. 113-1, at ¶ 72).

Plaintiffs initially opposed LCSD's unitary status in the area of student discipline, specifically LCSD's use of corporal punishment. (ECF No. 118). However, Plaintiffs have

withdrawn their opposition because LCSD agreed to eliminate its use of corporal punishment as a means of disciplining students on the issuance of an order granting unitary status. (ECF No. 119).

**Student Retention Policy.** The 1993 Decree imposed upon LCSD the burden to "justify the retention of any student" with "objective criteria." (ECF No. 9, at ¶ 17). LCSD adopted its Student Promotion and Retention Policy ("Policy 4.55") which prohibits "social promotion" in accordance with state law. (ECF No. 113-1, at ¶ 73; 113-5, at p. 195). Under Policy 4.55, LCSD is required to evaluate each student annually and to notify parents if a student may be retained or required to retake a course. (ECF No. 113-5, at 195). Policy 4.55 includes a detailed process for each grade,[2] but in all cases, decisions regarding the promotion or retention of a student "shall be made on the basis of which grade placement provides the student a better chance of progressing in his/her educational development." (ECF No. 113-5, at p. 195). Policy 4.55 also provides for a conference with the principal, student's teachers, school counselor, special education representative (if applicable), and student's guardian to be held if there is any "doubt concerning the promotion or retention of a student." (ECF No. 113-5, at 195). Additionally, each LCSD student has a student success plan, as required by state law, that is reviewed and updated annually. (ECF No. 113-5, at p. 197).

Considering LCSD's policies and Superintendent Anderson's affidavit, the Court finds that LCSD's continued compliance with the 1993 Decree has demonstrated its "good-faith commitment to the whole of the [C]ourt's decree and to the provisions of the law and the Constitution that were the predicate for judicial intervention[.]" *See Freeman*, 503 U.S. at 491. Finding that LCSD has

[2] Retention is not used for LCHS students. Instead, LCSD offers credit recovery during the school year and summer school if a student did not receive credit for a particular class. LCHS students must attain a designated number of credits prior to being promoted to the next grade level. (ECF No. 113-1, at ¶¶ 78-79).

shown good faith compliance with the 1993 Decree, the Court may now proceed to evaluating whether the "vestiges" of past discrimination have been eliminated.

**B. Vestiges of Past Discrimination**

The second element, whether the vestiges of past discrimination have been eliminated, require courts to look "not only at student assignments, but 'to every facet of school operations—faculty, staff, transportation, extra-curricular activities and facilities.'" *Dowell*, 498 U.S. at 250 (quoting *Green v. Cnty. Sch. Bd. of New Kent Cnty., Va.*, 391 U.S. 430, 435 (1968) ("the *Green* factors"). The 1993 Decree addressed the facets of LCSD's operations including and beyond those articulated by the Supreme Court. *See id.* These include: (1) faculty assignments; (2) student assignments; (3) special education; (4) school programs and extra-curricular activities; (5) student discipline; and (6) student retention. (ECF No. 2). The Court will highlight the statistical evidence and efforts presented by LCSD below.

**1. Faculty and Staff**

In 1992, prior to the 1993 Decree, 84% of LCSD's certified staff were white and 16% were Black. (ECF No 1, at ¶ 7). Superintendent Anderson first notes that LCSD has not received many applicants for teaching positions and has struggled to fill vacancies in recent years. (ECF Nos. 113, at 6; 113-1, at ¶ 17). However, Superintendent Anderson testifies that during the 2023-2024 school year the positions of superintendent, principal, athletic director, coach, teachers in all four core subject areas, yearbook sponsor, FCCLA sponsor, and cheerleading sponsor were held by Black employees. (ECF No. 113-1, at ¶ 24). In the 2023-2024 school year, 48% of LCSD's staff were Black. Out of the six LCSD administrators, 67% were Black. Additionally, 52% of LCES's employees and 40% of LCHS's employees were Black. (ECF No. 113-4). Superintendent Anderson testifies that she believes the numbers are fairly balanced given the small number of

staff. She also testifies that the racial composition of LCSD faculty is reasonably proportional to LCSD student enrollment percentages given that 63% of LCES's student body and 61.6% of LCHS's student body is Black. (ECF No. 113-1, at ¶¶ 28, 30, 33).

**2. Student Assignments**

Total student enrollment for the 2023-2024 school year at LCSD was 483 students, of which 301 (62.3%) were Black. (ECF No. 113-1, at ¶ 34). LCSD is separated into two grade ranges in two separate facilities: grades K-6 attend LCES and grades 7-12 attend LCHS. At LCES, 63% of the students were Black. (ECF No. 113-6). At LCHS, 61.6% of the students were Black. (ECF No. 113-7). As noted above, class assignments for LCES students are made by random draw, with slight adjustments to consider distribution by race and gender, and class assignments for LCHS students are made by each student's request, assignment, and schedule.

**3. Special Education**

At the time the 1993 Decree was approved, LCSD had a Black student population of 58%, and Black students accounted for 70% of the students placed into special education classes. (ECF No. 9, at ¶ 11). During the 2023-2024 school year, 62.3% of LCSD's student population were Black, and Black students accounted for 56.1% of special education students. (ECF No. 113-1, at ¶¶ 34, 49). Superintendent Anderson testifies that she believes LCSD has operated in good faith in implementing its special education policies, and that Black students are no longer disproportionally placed in special education. (ECF No. 113-1, at ¶ 50).

**4. School Programs and Extracurricular Activities**

LCSD offers the following extracurricular activities: band; baseball; basketball; cheerleading; Educators Rising; football; Future Business Leaders of America; Future Family, Career, and Community Leaders of America; Future Farmers of America; gifted and talented;

National Honor Society; National Junior Honor Society; softball; student council; track; trap shooting; volleyball; and yearbook. (ECF No. 113-1, at ¶ 51). As described above, participation in these activities is determined by the number of students interested. All students interested in athletics may participate and all students who sign up for band class are a member of the band. (ECF No. 113-1, at ¶¶ 54, 56). Other activities have tryouts, like cheer (in 2023-2024 and 2024-2025, all students who tried out made the cheer team), or membership criteria, like the National Honor Society. (ECF No. 113-1, at ¶¶ 57, 59).

**5. Student Discipline**

During the 2023-2024 school year, LCSD recorded 438 disciplinary events (the infraction involved) and 339 disciplinary actions (the punishment administered). (ECF Nos. 113-1, at ¶ 65; 113-9). Black students accounted for 76.9% of the disciplinary events and received 73.7% of the disciplinary actions. (ECF No. 113-9). Out of the 48 students who only had one out-of-school suspension, 77.1% were Black. (ECF No. 113-9). Out of the 24 students who had multiple out-of-school suspensions, 91.7% were Black. (ECF No. 113-9). LCSD states that no students were expelled during the 2023-2024 school year. (ECF No. 113-1, at ¶ 71).

LCSD notes that its Discipline Demographics Report states that "students with multiple occurrences of [one] incident [category] are counted only once per incident code," and thus does not reflect how often a single individual student was subject to multiple disciplinary actions for violating different incident codes. (ECF Nos. 113-1, at ¶¶ 69-70; 113-9).

Corporal punishment consisted of 17.4% of LCSD's disciplinary actions in the 2023-2024 school year. Out of the 59 students who received corporal punishment during the 2023-2024 school year, 44 (74.6%) were Black. (ECF No. 113-9). LCSD has agreed to end its use of corporal punishment. (ECF No. 119).

**6. Student Retention**

Finally, the 1993 Decree stated that LCSD's retention rate "for African American students in kindergarten and in first grade [was] disproportionate to the numbers of the African American student population, being that African American students constitute[d] 86% of the students retained in kindergarten and 77% of the students retained in first grade." (ECF No. 9, at ¶ 17). As described above, LCSD adopted Policy 4.55 which outlines its guidelines for retention. Specifically, students in K-2 will be promoted "unless there are indications that would prohibit them from coping with the academic expectations of the next grade level." (ECF Nos. 113-1, at ¶ 76; 113-5, at 196). Students grades 3-8 are promoted to the next grade level if they pass three of the four core classes: language arts, math, science, and social studies. (ECF Nos. 113-1, at ¶ 76; 113-5, at 196). In the 2023-2024 school year, one Black student was retained in first grade, and the parent agreed with the retention decision. (ECF No. 113-1, at ¶ 77).

Upon reviewing the information provided above relevant to each of the *Green* factors and noting Plaintiffs' satisfaction[3] that LCSD has complied with all aspects of the 1993 Decree's desegregation obligations, the Court finds that LCSD has sufficiently shown that it has obtained full compliance of the 1993 Decree and that "the vestiges of past discrimination ha[ve] been eliminated to the extent practicable." *Dowell*, 498 U.S. at 250. Accordingly, LCSD's full compliance permits the Court to declare the school district unitary and relinquish its continuing jurisdiction to oversee compliance with the 1993 Decree. *See Smith*, 769 F.3d at 572.

---

[3] The lack of any opposition to the request for unitary status after decades under an enforceable consent decree provides greater weight in favor of granting the instant motion. *See Little Rock Sch. Dist. v. Pulaski Cnty. Spec. Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) (noting that a settlement agreed upon by all parties in ongoing desegregation litigation should be given "significant weight" when determining whether to approve the requested settlement); *see also Robinson v. Shelby Cnty. Bd. Of Educ.*, 566 F.3d 642, 650 (6th Cir. 2009) (stating that a court "must afford considerable weight" to a joint motion filed by all parties in a long-running desegregation matter) (citation omitted).

## IV. CONCLUSION

For the reasons stated above, the Court finds that Defendant LCSD's Motion for Declaration of Unitary Status (ECF No. 112) should be and hereby is **GRANTED**. Lafayette County School District is hereby declared to be unitary and this case is hereby **DISMISSED WITH PREJUDICE** as to all parties and claims.

**IT IS SO ORDERED**, this 28th day of January, 2026.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge